Nash and others vs. Hoxie and another.

*January 10 — January 29, 1884.*

CONTRACTS: EVIDENCE. *(1)* Res gestæ. *(2) Admissions: instruction to jury. (3, 4) Measure of damages. (5) Burden of showing mitigation.*

1. The question being whether a contract was in fact made or not, evidence that one party did not at the time have the property agreed to be delivered, or that one of the defendants told the other (his partner) not to make the contract, is inadmissible. Such facts are not part of the *res gestæ.*

2. An instruction that "admissions are regarded as weak testimony," though awkwardly expressed, is correct, as necessarily meaning that the testimony by which admissions are sought to be proved is weak and should be received with great caution.

3. The measure of damages for breach of a contract to have specific work done at a specific price is the profit of doing it if it had been allowed to be done, that is, the difference between the cost of doing it and the contract price.

4. Where, in such a case, payment of a part of the contract price was to be made in chattels at a stipulated value, such value is binding upon both parties in estimating the damages for a breach of the contract. *Starr v. Light,* 22 Wis., 433, distinguished.

5. The burden is upon the defendant to show facts in mitigation of the damages naturally following his breach of contract.

APPEAL from the Circuit Court for *Brown* County.

The facts are stated in the opinion. There was a verdict for the plaintiffs, and from the judgment entered thereon the defendants appealed.

*Gabe Bouck,* for the appellants.

*Charles W. Felker,* for the respondents.

ORTON, J. The contract was that the plaintiffs, as partners, should saw at their mills at the city of New London, during the sawing season of 1881, for the defendants, as partners, 1,000,000 feet of basswood and elm logs, and 50,000 feet of oak logs, to be delivered at the plaintiffs' mill for that

purpose by the defendants, for and in consideration of $2.75 per thousand feet for the basswood and elm logs, and of $3.75 per thousand feet for the oak logs, to be paid when the sawing was done, in cash, except the sum of $300, which was to be paid by the delivery of 100,000 feet of hemlock logs at the rate of $3 per thousand feet. The plaintiffs made all necessary preparation by the construction of booms, etc., to do said work, and notified the defendants that they were ready to do the same, but the defendants failed to furnish said logs, or any of them, for that purpose. The plaintiffs, therefore, demand judgment for the difference between the cost of such sawing and the contract price for the same, as their damages. One of the plaintiffs testified that they were ready and able to do such sawing had the said logs been furnished according to contract. The contract was made by one *Mellor* on behalf of the defendants, and by one *Nash* on behalf of the plaintiffs, but *Weatherby*, another of said plaintiffs, was informed by *Mellor* and *Nash* of the terms of the contract, and approved the same. Two of the plaintiffs, *Nash* and *Weatherby*, testified on the trial to the making of this contract, and the defendant *Mellor* alone testified that no such contract was made. This was the conflict of evidence upon this question; and —

*First*, for the purpose of making a preponderance of evidence in favor of the position of the defendants that no such contract was made, the defendants offered to show as "surrounding circumstances," (1) that when the pretended contract was made the defendants did not have or own the 100,000 feet of hemlock logs so promised to be delivered to the plaintiffs in part payment for such sawing, but had sold the same some time before to other parties; (2) that at or about the time when said contract was pretended to have been made the defendant *Hoxie* had instructed or advised his copartner *Mellor* not to enter into any such contract unless

in writing. These offers were rejected by the court, and this ruling is assigned for error.

It is not claimed that these facts were evidence unless as *res gestæ*. By the rule cited by the learned counsel of the appellant, from Greenleaf on Evidence [Vol. I, sec. 51*a*], that such facts are admissible if they tend to prove the issue, or constitute a link in the chain of proof, there was no such intimacy between these facts and the fact of making the contract as would make them a part of the *res gestæ*, or have any legitimate bearing upon the issue. These facts involve the conduct of one party some time before the date of the contract, in respect, perhaps, to the whole or some part of the subject matter of the future contract, of which the other party had no knowledge and in which they had no concern. It is not perceived how they can be made to affect the contract as a part of the *res gestæ*. It is difficult to perceive how any extraneous facts and circumstances can be *res gestæ* of the fact that no contract was made. They might be of the contract that was made, for the purpose of determining its terms and proper construction. They must be the essential circumstances of the transaction, and if no such transaction was entered into it can have no surrounding circumstances or *res gestæ*. It is merely an offer to show that the one party was so situated that it was improbable that he should have so contracted. If he could show that he was so situated that it was impossible by absence, that would be an *alibi*, or by any other disability, that would go to the very issue as to whether the contract was in fact made. But a mere improbability inferred from any other facts and circumstances than those which legitimately form a part of the transaction, consisting of the conduct or statements of one party, in the absence and without the knowledge of the other party, and some time before the date of the pretended contract, that any such contract was not in fact made, cannot and ought not to have any bearing upon the fact. What

were these facts from which such an inference is sought to be drawn? (1) That he did not then have the hemlock logs which were some time afterwards to be delivered; (2) that his partner told him not to make a *verbal* contract of that character. One may contract to deliver property which he then has not, for he may procure it in time, and one may disregard the advice of his partner in making a contract. It would be extremely unsafe to allow such evidence to have even a remote bearing upon the fact whether a certain contract was in fact made, and it is clearly no part of the *res gestæ* of the transaction by any authority. If such evidence is allowed, then in any case where there were no other witnesses to the contract than one of the plaintiffs and one of the defendants, and they should stand in direct contradiction upon the issue whether such a contract was in fact made, the defendant might make a preponderance of testimony in his favor or a corroboration of his own testimony, by showing that some time before, his wife, or friend, or partner advised him not to make such a contract unless in writing, and that he did not then have the article of property which was some time in the future to be delivered to the other party. The bare statement of the proposition condemns it. In this case, however, there were two witnesses, *Nash* and *Weatherby*, for the plaintiffs on this issue of making the contract, against only one for the defendant, and it would be still more preposterous to allow such testimony to have weight against such corroborated evidence. The testimony was properly rejected.

*Second.* The circuit court instructed the jury, at the request of the respondents' counsel, that " admissions are regarded as weak testimony." There was testimony tending to show that both of the plaintiffs, *Nash* and *Weatherby*, had admitted to witnesses that no such contract had been consummated, and these admissions were denied by them. The jury must have understood that this instruction referred to

this testimony to prove the admissions. The use of the word "testimony" in the instruction signifies this and nothing else. The admissions as such are not called weak when sufficiently established by testimony, but are called weak *testimony*. The expression is awkward and ungrammatical, but no other reasonable construction can be placed upon it in view of the testimony on the subject of the admission. "Testimony is the declaration of a witness under oath or affirmation." "Testifying is the giving of evidence." 2 Burrill's Law Dict., 525. "To testify is to make a solemn declaration on oath or affirmation for the purpose of establishing or making proof of some fact." Webster. Admissions, as facts established by the testimony, are strong evidence against the party making them, and not weak; but the testimony by which they are sought to be proved or established "should be received with the greatest caution and scrutiny," as said by Chief Justice DIXON in *Benedict v. Horner*, 13 Wis., 256, and "is the weakest kind of testimony," as said by Mr. Justice PAINE in *Dreher v. Town of Fitchburg*, 22 Wis., 675. This, in substance, is what is implied in this instruction, and the jury must have so understood it. But if the counsel supposed it possible that the jury might understand the instruction that admissions themselves, when clearly proven and established by unquestionable testimony, were weak as evidence against the party making them, he should have asked for further instruction on that point. *Page v. Town of Sumpter*, 53 Wis., 652.

*Third.* Exception was taken to the instruction given, "that if the plaintiffs are entitled to recover they are entitled to recover the difference between the contract price of doing the work and what it would have cost them to have performed the work." Exception was also taken to the refusal of the court to charge the jury substantially as asked by the defendants' counsel, that if the plaintiffs were entitled to recover anything, they could recover only nominal damages.

These two exceptions may be disposed of as involving the same question. The rule of damages in such a case has been so recently laid down by this court, in *Nilson v. Morse*, 52 Wis., 255, that it is unnecessary to look further into the authorities on that question. Mr. Justice TAYLOR says, in the opinion in that case, that "the rule in case of a breach of contract for doing specific work for a specified price is the profit the person would have realized had he been permitted to perform the work." This profit, of course, is ascertained by the difference between the contract price and the cost of doing the work. There can be no other rule of ascertaining it.

*Fourth.* Another exception taken by defendants' counsel was to the refusal of the court to instruct the jury that "the plaintiffs have not shown that they have sustained more than nominal damages." This was a question of fact more properly to be left to the jury than to be found by the court, but there was testimony of one of the plaintiffs as a witness, and of another witness, what the cost of doing this work would have been had the logs been furnished under the contract, and that evidence, together with the price fixed by the contract, furnished the necessary *data* for the computation of the profits which the plaintiffs were entitled to recover.

*Fifth.* It is claimed by the learned counsel of the appellants that it was in proof that the plaintiffs' mill was occupied throughout the season, and that therefore the plaintiffs should recover only nominal damages, or the profits which they received from such constant use of their mill should be deducted from the damages fixed by the above rule. There was no evidence that the mill was employed during the season to its full capacity, and that the plaintiffs could not have readily performed this work in addition to what sawing was done in the mill during that season. Whether such a deduction can be allowed in such a case, even if proof had been

made that the plaintiffs had received the full benefit of the use of their mill during that season, is at least questionable. *Nilson v. Morse, supra.* But if such a deduction on account of employment otherwise could be made in such a case, the burthen of showing it by the necessary proof was on the defendants. It is affirmative with the defendants to miti-gate or lessen the damages which approximately and natu-rally followed the breach of their contract. 1 Greenl. on Ev., sec. 74; *Knapp v. Runals,* 37 Wis., 135.; *Dickson v. Cole,* 34 Wis., 621; *Medbery v. Sweet,* 3 Pin., 210. The defendants did not offer any evidence to this effect or ask for any instruction to the jury upon the subject.

*Sixth.* It is further claimed by the learned counsel of the appellants that the 100,000 feet of hemlock logs should not be rated as a part of the contract price for doing the work at the price fixed in the contract of three dollars per thou-sand for the hemlock logs, and that it was incumbent upon the plaintiffs to have proved the real value of those logs at the time and place of delivery. The contract first stipulates for the whole price of the work, and then provides that the plaintiffs should receive, as part thereof, 100,000 feet of hemlock logs, at three dollars per thousand. When the par-ties have so stipulated and agreed upon their value, it would seem that such value should stand as irrevocably fixed, ex-cept by a change of the contract. It would, in such a case, seem to be grossly unjust to the defendants to allow the plaintiffs to show that the value was far above that agreed upon by the parties, in order to enhance their damages, and it would be equally so to the plaintiffs to allow the defend-ants to prove that they were worth much less than the agreed value. The case of *Starr v. Light,* 22 Wis., 433, cited by the appellants' counsel, is not in point. In that case suit was brought for the consideration of the sale of land which was to be paid in wheat at a fixed price per bushel. The defendant insisted upon paying that price in

lieu of a delivery of the wheat. It was held that the plaintiff was entitled to either the wheat or its value. Here the whole contract price for doing the work is fixed in the contract, a part of which is the sum of $300, as the fixed price of hemlock logs, to be delivered to the plaintiffs in payment of that amount. There is no other rule of damages in such a case, except the difference between such contract price and what would have been the cost of doing the work, and the agreed value of the logs is a part of such contract price. If that may be changed by proof of the actual value of the logs to determine the real profits lost, as well may the plaintiffs be allowed to prove their actual profits lost on the whole work, irrespective of the contract price, in money, as well as in the logs. It may be readily seen that the rule laid down in *Starr v. Light* can have no application to a case like this, of an entire breach of the contract, and a suit for the damages, which must be determined by the contract price, if one was fixed in it, and the cost of performance by the plaintiffs. In that case the plaintiffs had fully performed by the sale and conveyance of land, or an offer to convey, and the defendant refused to deliver the wheat. If the plaintiffs here had fully performed their contract, and the defendants had refused to deliver the hemlock logs, then they would be entitled, by that authority, to the real value of such logs. But neither party has performed, by reason of the defendants' failure, and it is a question of *damage* only, which must be estimated by the contract price. In that class of cases where a contract is to be performed by the delivery of specific articles at a certain price, and the value of the articles, irrespective of such price, is the measure of damages, the party not in default is entitled to receive the specific articles themselves, and, of course, in lieu thereof, the value. But here nothing was done under the contract, and the plaintiffs are not entitled to receive the hemlock logs, but only their damages, which are fixed by

the contract.   On the first proposition there is a great con-
flict of authority, but in the latter case there is none, so far
as I can find.

I have been compelled to enter into this discussion and
the examination of the authorities, because the defendants
may well claim that if the price fixed in the contract, at
which the hemlock logs are to be received, is not the rule of
the plaintiffs' damages for a failure to deliver the same, then
the plaintiffs failed to prove any damages therefor, and the
instruction of the court that their measure of damages was
in view of the contract price, was erroneous.   It is not
enough to say, in view of this principle, that, in the absence
of any proof of the value of the logs, the contract price
therefor is to be taken as that value.   If the price fixed in
the contract can have any effect whatever in fixing the value
or the measure of damages, then it must have full effect,
and determine the same.   There cannot be two rules in such
a case.   The language in the case of *Courcier v. Graham*, 2
Ohio, 154, is:   "This price was agreed upon by the parties.
The valuation is made, and he assents to it.   He agreed to
the price of the goods with a full knowledge of their char-
acter.   No fraud was practiced or intended."   It must be
borne in mind that this suit is not for the failure of the
defendants to deliver the hemlock logs.   It is for damages
on the whole contract, to be estimated by the contract price,
if there is any, and the cost of performance by the plaint-
iffs.   The plaintiffs are not entitled to the logs, and there-
fore not to their value.   The rule in such a case is properly
stated in *Ganson v. Madigan*, 13 Wis., 67, a case where the
contract was to pay for property to be delivered at a fixed
price, and is stated also in the following cases:   *Harring-
ton v. Wells*, 12 Vt., 505; *White v. Tompkins*, 52 Pa. St.,
363; *Perry v. Smith*, 22 Vt., 301; *Pinney v. Gleason*, 5
Wend., 393; *Trowbridge v. Holcomb*, 4 Ohio St., 38; *Grieve
v. Annin*, 1 Halst., 463; *Smith v. Dunlap*, 12 Ill., 184;

*Fleming v. Potter,* 7 Watts, 381; Chipman on Con., 35. The contract was in evidence, and the contract price for doing the work, both in money and in the hemlock logs, is shown thereby.

*By the Court.*— The judgment of the circuit court is affirmed.