LOMMEN, Appellant, vs. DANAHER, Respondent.

*November 14, 1916—January 16, 1917.*

*Vendor and purchaser of land: Breach of contract by vendor: Measure of damages: Exchange of properties: Stated values, when not binding.*

1. Where the vendor fails to perform an executory land contract, having agreed to do what he had no right to do, taking his chances upon being able to acquire such right, he is guilty of a species of bad faith and is liable to make good to the opposite party the damages caused to him by the loss of his bargain.

2. Defendant contracted to sell to plaintiff certain lands to which he did not have full title, for a consideration of $66,500 to be paid partly in money and partly by a stock of merchandise and store fixtures and certain real estate subject to incumbrances. The contract provided that "the value of the equities in the real estate and personal property as reckoned in this transaction is $44,500, which leaves a balance of $22,000 due to" defendant; and a date was fixed when "the exchange of properties" was to be made. Defendant was unable to obtain the title necessary to carry out his agreement. *Held,* that as damages for such breach plaintiff was entitled to recover the full value of his bargain.

3. The measure of the damages in such case is the difference between the fair market value, at the time of the breach, of plaintiff's equities in the property he was to transfer to defendant, and the like value at such time of the lands defendant was to convey, less the $22,000 which was to be paid in money, and interest upon said difference from the time of the breach.

4. The values stated in the contract, not having been specified or intended as fixing the actual values of the respective properties, but as a mere trading basis, were not binding on the parties in respect to damages for the breach of the contract.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge.    *Reversed.*

Action for damages for breach of contract.

Plaintiff made a land contract with defendant whereby the latter promised to sell the former a number of tracts of Montana land "for the consideration of $66,500," plaintiff to pay therefor by a stock of merchandise and store fixtures, located in a store building in Caledonia, Minnesota, the merchandise being inventoried at $5,000 and fixtures at $2,500, also some other personal property and some equities in real estate, such real estate to be taken subject to mortgage indebtedness of $13,500, and the balance as thus indicated:

"The value of the equities in the real estate and personal property, as reckoned in this transaction, is forty-four thousand five hundred dollars ($44,500) which leaves a balance of $22,000 due to *T. F. Danaher* on the lands in Yellowstone county, Montana, above described, which amount of $22,000 will be paid in ten annual equal payments of two thousand dollars ($2,000) each, said deferred payments to bear interest at the rate of six per cent. per annum payable annually."

Defendant agreed as to his title and right to convey the Montana lands as follows:

"It is understood and agreed that the title to the lands in Yellowstone county, Montana, is Northern Pacific contracts; that a letter from the Northern Pacific Railway Company will be furnished as evidence that *T. F. Danaher* has good right to sell the same.    Release of said lands in Yellowstone county, Montana, to be made on units of one section, the price of release to depend upon the grade of land, to be not less than one dollar and a half ($1.50) and not more than three and one half ($3.50) per acre."

The contract contained other provisions, not material to be stated here, and a stipulation that "the exchange of properties" should be made May 27, 1913.

Plaintiff was ready in due time to perform on his part and

duly tendered performance. He put defendant in possession of the merchandise and store fixtures. Defendant failed to produce such a letter from the railway company as agreed upon. His contracts with the company, six in number, covered other than the particular land and he had no right to assign them or sell any of the land without consent of the company. He could not get a deed of any of the land in any one contract without paying for all land covered thereby. The attitude of the company was such that he could not carry out his agreement with plaintiff. The latter would not accept anything other than full performance and defendant therefore declared the deal off and surrendered back possession of the stock of merchandise and store fixtures which had been retained by him for about ten days. Plaintiff claimed, as general damages, for the breach of contract, compensation for the loss of his bargain to be computed by deducting from the market value of the Montana lands at the time of the breach the aggregate of such value at such time of the property he agreed to transfer to defendant and the $22,000, less the incumbrances on the property of $13,500, with interest on the balance from such time.

There was a claim for special damages in respect to the store stock and business and to support that plaintiff was asked, when testifying in his own behalf, how the closing down of the store affected the value of the stock. Upon objection being made thereto as not bearing on the proper measure of damages, it was sustained after plaintiff stated that he did not resume the store business for one year because when he sold out he could not buy goods and did not have any money to do so.

There was evidence respecting the general damages claimed by plaintiff to the effect that the market value of the Montana land at the time of the breach was $55,000 and of plaintiff's property $31,750. The jury found accordingly.

A motion was made in plaintiff's behalf for judgment for $14,750 with interest and costs, the amount being determined according to his claim as aforesaid, that is by adding to the $31,750 the $22,000 which was agreed to be paid in money, deducting therefrom the $13,500 of incumbrances on plaintiff's property, and deducting the balance from the value of the Montana land as found by the jury. The motion was denied. Then a motion was made in plaintiff's behalf for an order setting aside the verdict and granting a new trial upon the ground, among others, of error in rejecting the evidence before indicated. That was denied. Judgment was then awarded defendant upon the theory that the parties stipulated in the contract to the values of the respective properties and were mutually bound thereby and, therefore, since plaintiff kept his property he was not damaged by not being able to obtain the agreed equivalent from defendant.

For the appellant there was a brief by *Lees & Bunge* of La Crosse, and oral argument by *George W. Bunge*.

For the respondent there was a brief by *White & Skogmo* of River Falls and *Christofferson & Christofferson* of St. Paul, Minnesota, and oral argument by *F. M. White*.

MARSHALL, J. It appears from the foregoing that the contract between the parties was wholly executory on the part of respondent at the time he rescinded it because he was unable to strictly perform as he agreed and appellant would not accept any modified performance. The latter was wholly without fault and, though he received back the stock of merchandise and store fixtures, he insisted upon the benefit of his bargain. The trial court, notwithstanding the loss of such bargain prevented appellant from making a gain, according to the verdict of the jury, of $14,750, held that he was not entitled to recover anything. It is of that appellant mainly complains, insisting that the ordinary rule for the determination of damages for breach of contract applies.

It cannot be questioned but that, in general, if two persons enter into a contract and one breaches it, the other is entitled to full compensation for the loss of his bargain to be computed by the settled rule that the damages must be reasonably certain,—not speculative, and extend to the natural and proximate consequences of the wrong, and so must be fairly and reasonably considered as arising in the natural course of things from the breach and to be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of the breach of it. *Guelzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119; *Anderson v. Savoy,* 137 Wis. 44, 48, 118 N. W. 217; *Altschuler v. A:, T. & S. F. R. Co.* 155 Wis. 146, 153, 144 N. W. 294. Why is that rule not applicable to this case? The trial court held that it was not, within the doctrine of *Nash v. Hoxie,* 59 Wis. 384, 18 N. W. 408, and, particularly, the rule stated in *Fagan v. Hook,* 134 Iowa, 381, 391, 105 N. W. 155, 111 N. W. 981, in these words:

"If parties definitely settle upon and agree to the value of their respective properties for the purpose of sale one to the other, no inquiry concerning actual values is permissible, as these are put beyond question by their having determined the worth thereof for themselves, and thereby fixed the measure of damages in event of a breach. If, on the other hand, the agreement is a mere trading contract, by the terms of which one party is to exchange certain property belonging to him for that of the other upon or by the payment, of the difference, and to this end and for the purpose solely of accomplishing this result, but not to ascertain their actual values, estimates are placed on the respective properties, then neither party is bound by the values so estimated, and the measure of damages to be applied is that of *quantum meruit.* In other words, the values designated in the agreement to be binding on the parties must appear to have been specified as such, and not as merely incidental to some other purpose not involving the intention of deciding the true worth. The criterion in determining whether there has been a sale or exchange of per-

sonal property is whether there is a fixed price at which the things are to be exchanged. If there is such fixed price, the transaction is a sale; but, if there is not, the transaction is an exchange."

Did the parties here, within the doctrine of *Nash v. Hoxie,* 59 Wis. 384, 18 N. W. 408, and the Iowa case, mutually agree upon the real value of their respective properties at the time the contract was entered into? The trial court, as indicated, resolved that in the affirmative and so held that the ordinary rule of damages did not apply; that plaintiff was bound by such mutual agreement, and, as he retained all his property and was relieved from the obligation to pay the $22,000, he was not damaged by reason of not being able to obtain for such property and the $22,000, the agreed equivalent.

It seems that, by the logic of the rule the court relied on, the transaction in question was a trading agreement, in the nature of a land contract, by the terms of which one party was to sell or exchange certain property, belonging to him, for that of the other and a difference in money and, in the language quoted, "to this end and for the purpose solely of accomplishing this result, but not to ascertain their actual values," prices were placed on the respective properties; and so, as said, neither party was bound by such values in respect to damages for the breach of contract. In order to take this case out of the ordinary rule for recoverable damages, the evidence should be pretty clear and satisfactory that it does not apply by reason of the parties, in effect, having stipulated that it should not. That is the logic of the doctrine upon which the trial court relied. "The values designated in the agreement to be binding on the parties must appear to have been specified as such, and not incidental to some other purposes not involving the intention of deciding the true worth."

There is no satisfactory indication that the amounts stated in the writing were specified as actual values. As to re-

spondent's property, nothing was said about its value; there was the mere contract selling price as in any ordinary land contract or a deed.    As to appellant's property, it was recited that the value was $44,500 "as reckoned in this transaction." That language, pretty plainly, indicated the value stated was for a mere trading basis and not with any thought of making a binding agreement as to the real market value of the property.

In *Robbins v. Selby,* 144 Iowa, 407, 121 N. W. 674, 122 N. W. 954, where the doctrine of *Fagan v. Hook* was referred to, there were prices mentioned in the contract, very much as here, and it was held, under all the circumstances characterizing the transaction, which were proper to be considered in construing the writing, that the contracting parties did not purpose making a binding agreement as to the real worth of their respective properties.

If the contract here fails to clearly indicate that the parties did not intend to agree upon the real worth of their respective properties, and it seems that such is the situation, it, at the best for respondent, is ambiguous in respect to the matter, warranting the court in looking to characterizing circumstances in determining the real meaning.    There are several such circumstances, the most significant being that neither party claimed that the real value of his property was that stated in the contract.    Such values were so largely less than the prices stated in the writing as to strongly negative the idea that there was a definite purpose to agree upon such prices as such values,—that the minds of the parties never met on that subject.

So the doctrine of *Fagan v. Hook* does not support the decision complained of, but rather the contrary.

Further, as indicated in *Norton v. Hinecker,* 137 Iowa, 751, 115 N. W. 612, a distinction is to be recognized between an action for the value of the property agreed to be transferred and an action for damages where the contract has

been, while executory, wrongfully rescinded, then the damages for the breach are to be determined, not on the basis of "the trading value put upon the properties, but by the actual value of such properties from which it might be ascertained what plaintiff's real loss, in being deprived of the benefit of the contract, actually was."

In reaching a conclusion, we have not found it necessary to deal with the many authorities cited to our attention treating of the technical distinction between a sale and an exchange of properties.    There was neither, completed here.    There was an executory contract on the part of respondent to sell or exchange his real estate for other property and a balance in money, a mere price being placed on the properties for the purpose of the transaction, without any agreement as to actual values.    Each had his selling price, and evidently purposed obtaining more than he parted with, to make a profitable bargain.    They, practically, made a land contract in which each stated his price and it was met on a trading basis.

In case of an executory land contract, and it is not perceived why, upon principle or on authority, the agreement in question should not be so classed, where the executory seller fails to perform, having agreed to do what he had no right to do, taking his chances upon being able to acquire such right, he is guilty of a species of bad faith, and, if not in an ordinary case of breach of such a contract, he is liable to make good to the opposite party the damages caused to him by the loss of his bargain.    *Arentsen v. Moreland,* 122 Wis. 167, 99 N. W. 790; *Muenchow v. Roberts,* 77 Wis. 520, 46 N. W. 802; *Maxon v. Gates,* 136 Wis. 270, 116 N. W. 758; *McLennan v. Church,* 163 Wis. 411, 158 N. W. 73.

In the last case cited, it is said that, "ordinarily, the damages recoverable for breach of a land contract by failing to convey, over and above payments made, is the difference between the contract price and the market value at the time of the breach, with interest to the date of the judgment."

In *Muenchow v. Roberts* it was said: "The plaintiff is entitled to recover, if at all, the value of his bargain. The true measure of such value is the value of the land the defendant contracted to sell to him, estimated at the time the contract was broken, less what the plaintiff agreed to pay therefor." That rule, as before indicated, applies wherever the contract breached is characterized by any species of bad faith, even such as an agreement to sell land which the vendor has no title to, or sell without present right to convey, depending upon subsequently acquiring such right. A full discussion of the subject will be found in *Arentsen v. Moreland, supra.*

Applying the foregoing to the situation here, it seems that the trial court erred in denying relief to the appellant. He was entitled to the full benefit of his bargain. That requires the difference between the fair market value, at the time of the breach, of the property he was to sell respondent, less the incumbrances thereon, and the like value at such time of the Montana land less the $22,000, which was to be paid in money, and interest from the time of such breach. That is in accordance with appellant's motion for judgment on the verdict of the jury.

The result stated renders unnecessary consideration of the question of whether error was committed to appellant's prejudice in refusing to grant a new trial. The motion in respect thereto was an alternative. Had the court granted the motion for judgment, the result would have been a waiver of any errors against appellant in respect to the rejection of evidence which was the subject of the motion for a new trial.

*By the Court.*—The judgment is reversed, and the cause remanded for judgment in plaintiff's favor in accordance with this opinion.

SIEBECKER, J., dissents.