HANDICAPPED CHILDREN'S EDUCATION BOARD OF SHEBOY-
GAN COUNTY, a municipal corporation, Plaintiff-
Respondent-Petitioner,

v.

Elaine K. LUKASZEWSKI, Defendant-Appellant.

Supreme Court

*No. 81-1141. Argued March 1, 1983.—Decided April 26, 1983.*

(Also reported in 332 N.W.2d 774).

For the petitioner there was a brief (in court of appeals) by *John E. Raftery*, assistant corporation counsel, with whom on the brief was *Alexander Hopp*, corporation counsel, Sheboygan, and oral argument by *Mr. Raftery*.

For the defendant-appellant there was a brief by *John S. Williamson, Jr.*, and *Habush, Habush & Davis, S.C.*, Milwaukee, and oral argument by *Mr. Williamson*.

Amicus Curiae brief was filed by *Michael L. Stoll,* staff counsel, Madison, for the Wisconsin Education Association Council.

WILLIAM G. CALLOW, J. This review arises out of an unpublished decision of the court of appeals which affirmed in part and reversed in part a judgment of the Ozaukee county circuit court, Judge Warren A. Grady.

In January of 1978 the Handicapped Children's Education Board (the Board) hired Elaine Lukaszewski to serve as a speech and language therapist for the spring term. Lukaszewski was assigned to the Lightfoot School in Sheboygan Falls which was approximately 45 miles from her home in Mequon. Rather than move, she commuted to work each day. During the 1978 spring term, the Board offered Lukaszewski a contract to continue in her present position at Lightfoot School for the 1978–79 school year. The contract called for an annual salary of $10,760. Lukaszewski accepted.

In August of 1978, prior to the beginning of the school year, Lukaszewski was offered a position by the Wee Care Day Care Center which was located not far from her home in Mequon. The job paid an annual salary of $13,000. After deciding to accept this offer, Lukaszewski notified Thomas Morrelle, the Board's director of special education, that she intended to resign from her position at the Lightfoot School. Morrelle told her to submit a letter of resignation for consideration by the Board. She did so, and the matter was discussed at a meeting of the Board on August 21, 1978. The Board refused to release Lukaszewski from her contract. On August 24, 1978, the Board's attorney sent a letter to Lukaszewski directing her to return to work. The attorney sent a second letter to the Wee Care Day Center stating that the Board would take legal action if the Center interfered with Lukaszewski's performance of her contractual obligations at the Lightfoot School. A

copy of this letter was sent to the Department of Public Instruction.

Lukaszewski left the Wee Care Day Care Center and returned to Lightfoot School for the 1978 fall term. She resented the actions of the Board, however, and retained misgivings about her job. On September 8, 1978, she discussed her feelings with Morrelle. After this meeting Lukaszewski felt quite upset about the situation. She called her doctor to make an appointment for that afternoon and subsequently left the school.

Dr. Ashok Chatterjee examined Lukaszewski and found her blood pressure to be high. Lukaszewski asked Dr. Chatterjee to write a letter explaining his medical findings and the advice he had given her. In a letter dated September 11, 1978, Dr. Chatterjee indicated that Lukaszewski had a hypertension problem dating back to 1976. He reported that on the day he examined Lukaszewski she appeared agitated, nervous, and had blood pressure readings up to 180/100. It was his opinion that, although she took hypotensive drugs, her medical condition would not improve unless the situation which caused the problem was removed. He further opined that it would be dangerous for her to drive long distances in her agitated state.

Lukaszewski did not return to work after leaving on September 8, 1978. She submitted a letter of resignation dated September 13, 1978, in which she wrote:

"I enclose a copy of the doctor's statement concerning my health. On the basis of it, I must resign. I am unwilling to jeopardize my health and I am also unwilling to become involved in an accident. For these reasons, I tender my resignation."

A short time later Lukaszewski reapplied for and obtained employment at the Wee Care Day Care Center.

After Lukaszewski left, the Board immediately began looking for a replacement. Only one qualified person

applied for the position. Although this applicant had less of an educational background than Lukaszewski, she had more teaching experience. Under the salary schedule agreed upon by the Board and the teachers' union, this applicant would have to be paid $1,026.64 more per year than Lukaszewski. Having no alternative, the Board hired the applicant at the higher salary.

In December of 1978 the Board initiated an action against Lukaszewski for breach of contract. The Board alleged that, as a result of the breach, it suffered damage in the amount of the additional compensation it was required to pay Lukaszewski's replacement for the 1978–79 school year ($1,026.64). A trial was held before the court. The trial court ruled that Lukaszewski had breached her contract and awarded the Board $1,249.14 in damages ($1,026.64 for breach of contract and $222.50 for costs).

Lukaszewski appealed. The court of appeals affirmed the circuit court's determination that Lukaszewski breached her contract. However, the appellate court reversed the circuit court's damage award, reasoning that, although the Board had to pay more for Lukaszewski's replacement, by its own standards it obtained a proportionately more valuable teacher. Therefore, the court of appeals held that the Board suffered no damage from the breach. We granted the Board's petition for review.

There are two issues presented on this review: (1) whether Lukaszewski breached her employment contract with the Board; and (2) if she did breach her contract, whether the Board suffered recoverable damages therefrom.

## I.

It is undisputed that Lukaszewski resigned before her contract with the Board expired. The only question is

whether her resignation was somehow justified. Lukaszewski argues that, because she resigned for health reasons, the trial court erred in finding a breach of contract. According to Lukaszewski, the uncontroverted evidence at trial established that her employment with the Board endangered her health. Therefore, her failure to fulfill her obligation under the employment contract was excused.

We recognize that under certain conditions illness or health dangers may excuse nonperformance of a contract. This court held long ago that "where the act to be performed is one which the promisor alone is competent to do, the obligation is discharged if he is prevented by sickness or death from performing it." *Jennings v. Lyons,* 39 Wis. 553, 557 (1876). *See also* Restatement (Second) of Contracts sec. 262 (1981) ; 18 S. Williston, *A Treatise on the Law of Contracts* sec. 1940 (3d ed. 1978). Even assuming this rule applies to Lukaszewski's failure to perform, we are not convinced that the trial court erred in finding a breach of contract.[1]

A health danger will not excuse nonperformance of a contractual obligation when the danger is caused by the nonperforming party. *See Jennings v. Lyons,* 39 Wis. at 557–58. Nor will a health condition or danger which was foreseeable when the contract was entered into justify its breach. *Id.* It would be fundamentally unfair to allow a breaching party to escape liability because of a health danger which by his or her own fault has precluded performance.

In the instant case the trial court expressly found that the danger to Lukaszewski's health was self-induced.

---

[1] It must be noted that we do not decide whether this rule extends to the facts of the instant case.

Lukaszewski testified that it was stressful for her to return to the Lightfoot School in the fall of 1978 because she did not want to work there and because she resented the Board's actions to compel her to do so. Citing this testimony, the court concluded: "The Court finds that the defendant's medical excuse was a result of the stress condition she had created by an attempted repudiation of her contract, and was not the product of any unsubstantiated, so-called, harrassment [sic] by the plaintiff's board." Lukaszewski further complained about the hazard of driving 45 miles to and from Sheboygan Falls each day. She alone, however, caused this commute by choosing to live in Mequon. The trial court pointed out in its decision from the bench that she could have eliminated this problem by simply moving to Sheboygan Falls. Thus the court clearly found that any health danger associated with performance of the employment contract was the fault of Lukaszewski, not the Board. This factual finding alone is enough to invalidate the medical excuse for Lukaszewski's breach.

The medical excuse is defective for a second reason. In order to excuse Lukaszewski's nonperformance, the trial court would had to have made a factual finding that she resigned for health reasons. The oral decision and supplemental written decision of the trial court indicate that it found otherwise. In its written decision the court stated:

"[Lukaszewski's] reasons for resignation were succinctly stated in her testimony, upon cross-examination . . . as follows: '. . . I had found a job that was closer in proximity to my home and it offered a different type of challenge, . . . also that the pay was, was more, and I asked them if I could be released from my contract.' "

The trial court did not include the health danger. Indeed, the court appeared to doubt that Lukaszewski resigned for health reasons. The trial judge observed that

Lukaszewski had a history of hypertension dating back at least five or six years. Her blood pressure would fluctuate at the slightest provocation. He further noted that she was able to commute between Sheboygan Falls and Mequon from January, 1978, through the middle of the following summer. In short, the decisions indicate that the court believed Lukaszewski resigned for reasons other than her health.

These factual findings by the trial court invalidate Lukaszewski's medical excuse and thereby establish a breach. The standard of review applicable to this issue is well settled.

"Findings of fact by the trial court will not be upset on appeal unless they are against the great weight and clear preponderance of the evidence. The evidence supporting the findings of the trial court need not in itself constitute the great weight or clear preponderance of the evidence; nor is reversal required if there is evidence to support a contrary finding. Rather, to command a reversal, such evidence in support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence. *In re Estate of Jones,* 74 Wis. 2d 607, 611, 247 N.W.2d 168 (1976). In addition, when the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses. *Gehr v. Sheboygan,* 81 Wis. 2d 117, 122, 260 N.W.2d 30 (1977). When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact. *Id.*" *Cogswell v. Robertshaw Controls Co.,* 87 Wis. 2d 243, 249–50, 274 N.W.2d 647 (1979).

We conclude that the trial court's findings of fact are not against the great weight and clear preponderance of the evidence and, therefore, must be upheld. Accordingly, we affirm that portion of the court of appeals' decision which affirmed the circuit court's determination that Lukaszewski breached her employment contract.

II.

This court has long held that an employer may recover damages from an employee who has failed to perform an employment contract. *Walsh v. Fisher,* 102 Wis. 172, 179, 78 N.W. 437 (1899). Damages in breach of contract cases are ordinarily measured by the expectations of the parties. The nonbreaching party is entitled to full compensation for the loss of his or her bargain—that is, losses necessarily following from the breach which are proven to a reasonable certainty and were within contemplation of the parties when the contract was made. *Lommen v. Danaher,* 165 Wis. 15, 19, 161 N.W. 14 (1917) ; *Pleasure Time, Inc. v. Kuss,* 78 Wis. 2d 373, 385, 254 N.W.2d 463 (1977). Thus damages for breach of an employment contract include the cost of obtaining other services equivalent to that promised but not performed, plus any foreseeable consequential damages. *Roth v. Speck,* 126 A.2d 153, 155 (D.C. 1956) ; Annot., 61 A.L.R. 2d 1008 (1958).

In the instant case it is undisputed that, as a result of the breach, the Board hired a replacement at a salary exceeding what it had agreed to pay Lukaszewski. There is no question that this additional cost ($1,026.64) necessarily flowed from the breach and was within the contemplation of the parties when the contract was made. Lukaszewski argues and the court of appeals held, however, that the Board was not damaged by this expense. The amount a teacher is paid is determined by a salary schedule agreed upon by the teachers' union and the Board. The more education and experience a teacher has the greater her salary will be. Presumably, then, the amount of compensation a teacher receives reflects her value to the Board. Lukaszewski argues that the Board suffered no net loss because, while it had to pay more for the replacement, it received the services of a propor-

tionately more valuable teacher. Accordingly, she maintains that the Board is not entitled to damages because an award would place it in a better position than if the contract had been performed.[2]

We disagree. Lukaszewski and the court of appeals improperly focus on the objective value of the services the Board received rather than that for which it had bargained. Damages for breach of contract are measured by the expectations of the parties. The Board expected to receive the services of a speech therapist with Lukaszewski's education and experience at the salary agreed upon. It neither expected nor wanted a more experienced therapist who had to be paid an additional $1,026.64 per year. Lukaszewski's breach forced the Board to hire the replacement and, in turn, to pay a higher salary. Therefore, the Board lost the benefit of its bargain. Any additional value the Board may have received from the replacement's greater experience was imposed upon it and thus cannot be characterized as a benefit. We conclude that the Board suffered damages for the loss of its bargain in the amount of additional compensation it was required to pay Lukaszewski's replacement.

This is not to say that an employer who is injured by an employee's breach of contract is free to hire the most qualified and expensive replacement and then recover the difference between the salary paid and the contract salary. An injured party must take all reasonable steps to mitigate damages. *Kuhlman, Inc. v. G. Heileman*

---

[2] We have held that an injured party is not entitled to be placed in a better position because of a breach of contract. *Dehnart v. Waukesha Brewing Co.*, 21 Wis. 2d 583, 595–96, 124 N.W.2d 664 (1963); *Pleasure Time, Inc. v. Kuss*, 78 Wis. 2d 373, 385, 254 N.W.2d 463 (1977). However, because we find that the Board was damaged by Lukaszewski's breach, this problem does not arise.

*Brewing Co.*, 83 Wis. 2d 749, 752, 266 N.W.2d 382 (1978). Therefore, the employer must attempt to obtain equivalent services at the lowest possible cost. In the instant case the Board acted reasonably in hiring Lukaszewski's replacement even though she commanded a higher salary. Upon Lukaszewski's breach, the Board immediately took steps to locate a replacement. Only one qualified person applied for the position. Having no alternative, the Board hired this applicant. Thus the Board properly mitigiated its damages by hiring the least expensive, qualified replacement available.

We hold that the Board is entitled to have the benefit of its bargain restored. Therefore, we reverse that portion of the court of appeals' decision which reversed the trial court's damage award.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

DAY, J. *(dissenting)*. I dissent. The majority opinion correctly states, "The only question is whether her resignation is somehow justified." I would hold that it was.

Elaine Lukaszewski left her employment with the school board. She suffered from high blood pressure and had been treated for several years by her physician for the condition. She claimed her hypertension increased due to stress caused when the Board refused to cancel her teaching contract. Stress can cause a precipitous rise in blood pressure. High blood pressure can bring on damage to other organs of the body.

She was upset over what she perceived was the unreasonable attitude of her employer in refusing to cancel her contract. Following an unpleasant exchange with the Board's Director of Special Education, Mr. Morrelle, she went to her physician. He found her blood pressure to be 180 over 100 which he testified was very high. He advised her to rest and to get out of the situation that

was causing her symptoms which she properly interpreted to mean "quit the job." He also told her that her elevated blood pressure made it dangerous for her to drive the ninety miles round-trip each day, that commuting from her home in Mequon to Sheboygan Falls entailed.

The trial court and the majority of this court conclude she could have obviated the danger of driving by moving to Sheboygan Falls. But the fact is that would not have eliminated her illness nor the hazards to her health that her condition posed. There is not a shred of medical evidence that her blood pressure problems would be cured or appreciably alleviated if she moved from her home to Sheboygan Falls.

Once the dangerous hypertension is established, and here the only medical testimony did just that, it should follow that one should be relieved of a contractual obligation for services unless malingering is shown. In this case no one denies she has the condition. But, the trial court says, the condition was one "she had created," which the majority on this court refer to as "self induced." The majority here seized on the rationale that illness that is "self induced" is somehow less worthy of judicial consideration than illness caused by others, or by outside forces over which the patient has no control.

It seems clear from the trial judge's comments that if he had found her physical condition had been caused by the Board's "harassment," he would have let her out of the contract. This is the only logical conclusion from the statement by the trial judge that, "The Court finds that the defendant's medical excuse was a result of the stress condition she had created by an attempted repudiation of her contract, and was not the product of any unsubstantiated, so-called, harrassment [sic] by the plaintiff's board."

In either instance, whether "caused" by the Board or "self induced" because of her gnawing feeling of being unfairly treated, the objective symptoms would be the same.

Either, in my opinion, should justify termination of the contract where the physical symptoms are medically certifiable as they admittedly are here.

The majority makes the following assertion, "It would be fundamentally unfair to allow a breaching party to escape liability because of a health danger which by his or her own fault has precluded performance."

Happily no authority is cited for this sweeping statement which means that it will be easier to ignore it, gloss over it, "distinguish" it or overrule it in the future. Under this new found axiom, could a concert violinist under contract be sued to cover any added costs of his replacement if he lost an arm in an accident where he was found 100 percent negligent? Or could another party to a personal service contract be held liable if he was unable to perform because of a debilitating illness clearly caused by negligent health habits?

The majority cites a hundred year old case, *Jennings v. Lyons*, 39 Wis. 553 (1876), for two propositions:

"A health danger will not excuse nonperformance of a contractual obligation when the danger is caused by the nonperforming party. *See Jennings v. Lyons*, 39 Wis. at 557–58. Nor will a health condition or danger which was foreseeable when the contract was entered into justify its breach." (*Supra*, p. 203.)

*Jennings* is cited by the majority to bolster its position. The case is not really in point. In that case a husband and wife contracted to work on a farm for one year for the sum of $300. He was to do outside work and she to do housework. After four and one-half months she had to leave to have a baby and the husband had to go with her. The employer refused to pay either

of them anything and they brought suit to recover for the time they had worked. The trial court instructed the jury that if at the time the plaintiff and his wife quit working for defendant, the wife was sick and unable to do her part of the work, plaintiff was not bound to a further performance of the contract and was entitled to recover the value of his and his wife's services for the time they actually worked. The trial court found for the plaintiff.

This court reversed and held that the defendant did not have to pay them anything. The court held that the rule is that performance is excused:

". . . as where performance has been rendered impossible by an act of God, by the act of the law, or by the act of the other party. . . . . the obligation is discharged if he is prevented by sickness or death from performing it . . . sickness or death is generally recognized as an act of God in such a sense that it excuses the nonperformance, and a recovery is allowed upon a quantum merit. . . ." 39 Wis. at 557.

This court said that since the husband must have known his wife was four months pregnant when they took the job and that she would be unable to complete the year of work, therefore no recovery was allowed. This court said "For when performance becomes impossible by reason of contingencies which should have been foreseen and provided against in the contract, the promisor is held answerable." 39 Wis. at 558. Nowhere did the *Jennings* court say "a health danger will not excuse nonperformance of a contractual obligation when the danger is caused by the nonperforming party."

The precedential value of *Jennings* is doubtful but to the extent the rules stated may still be valid it provides no support for the majority. Here there is an illness, "an act of God," there is nothing in the record to show that the severe increase in Elaine Lukaszewski's hyperten-

sion was foreseeable when she signed the contract. Thus, even under *Jennings,* the teacher should be excused from performance.

Hypertension is a health problem that when caused by stress, however induced, may require a job change. That is what occurred here.

But the majority has discovered what it apparently regards as a "fall back" position, that Elaine Lukaszewski really did not resign her teaching job for health reasons after all.

The majority says: "In short, the decisions [of the trial court] *indicate* that the court believed Lukaszewski resigned for reasons other than her health." (Emphasis added.) (*Supra,* p. 205.)

The word "indicate" has picked up increasing popularity in the jargon of the legal profession in the past few years mostly, I believe, because it does not say anything one can pin down precisely. *Webster's Third New International Dictionary* (1961) gives a wide range of possible meanings to the word "indicate," among them are: "SUGGEST, INTIMATE, HINT . . . INDICATE signifies to serve as a sign or symptom pointing to (the inference or action), stressing only a general, unspecified connection between subject and object . . ."

"Indicate" seems to fall short on the definiteness required for a "finding of fact" by a trial court.

The first time the case came to the court of appeals they sent it back for further "findings" and it is the "original" remarks from the bench plus additional written comments by the judge on remand that form the bases for the appeal and this review.

What the trial court said was that the desire to take the better job brought on the physical symptoms when release from her contract by the Board was refused.

If the trial court had found that she quit merely for the better job and *not* because of her health problems

brought on by the high blood pressure, this would be an entirely different case. However, that is *not* what the trial court found in my opinion. The trial court found her medical problems were self induced and concluded they were therefore unworthy of consideration.

I would reverse the court of appeals decision that held she breached her contract.

Because I would hold that on this record there was no breach, I would not reach the damage question.