9 F.3d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Luis VELTZE, Plaintiff-Appellee
v.
BUCYRUS-ERIE COMPANY, Defendant-Appellant.
 No. 92-3851.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 14, 1993.
Decided Nov. 16, 1993.
 
 1
 Before CUMMINGS and COFFEY, Circuit Judges, and ZAGEL, District Judge.*
 
 ORDER
 
 2
 Plaintiff Luis Veltze, a naturalized United States citizen residing in Bolivia, filed this diversity suit[1] against his former employer, Bucyrus-Erie Company, whose principal place of business is in Wisconsin, to recover certain relocation expenses following his termination by defendant in Peru. The jury awarded him damages totaling $183,927.39. Subsequently the judgment was reduced by a remittitur, so that the final judgment was for $181,835.
 
 
 3
 Plaintiff is an electrical engineer hired by defendant in 1970. Eighteen years later he accepted an assignment to work as a field engineer for defendant in Peru. Pursuant to its Foreign Service Compensation Administration Manual ("Foreign Service Manual"), defendant agreed that if plaintiff was discharged on that foreign assignment, it would pay his and his family's relocation expenses back to Milwaukee, the point of origin, unless he was discharged for misconduct prejudicial to the defendant.
 
 
 4
 In November 1985, defendant discharged plaintiff and refused to pay his relocation expenses due to his alleged misconduct consisting of his failure to report his involvement in International Markets, Ltd. Before he was transferred to Peru, plaintiff incorporated International Markets as a small import/export business involving sales of items between the United States and South America. Plaintiff was president and 60% owner of International Markets. Over a three year period, the company's annual profits ranged from $40,000 to a $5000 loss.
 
 
 5
 While plaintiff was employed by defendant, it had a written code of ethics requiring each employee to make a yearly disclosure of any potential conflict of interest. Plaintiff never reported a conflict of interest. Plaintiff did not mention his involvement in International Markets because he determined that there was no potential conflict of interest. The alleged conflict concerned International Markets' arrangement to sell products of Bucyrus-Construction Products, a business entity formerly owned by the defendant that sold non-competitive products to defendant's customers and others. There was no evidence that any customer of defendant was confused as to whom plaintiff worked for or which company should be blamed for any problem that might arise. One of defendant's officials admitted that International Markets did not sell any products that competed with defendant. There was no evidence that plaintiff performed any International Markets work on defendant's time, or that he used any expenses coming from defendant for International Markets. A defense witness also admitted that International Markets was not hurting defendant, and plaintiff testified that he never contacted any of defendant's customers regarding Bucyrus-Construction Products. No evidence was presented that any customer of defendant was confused by plaintiff's arrangement with International Markets.
 
 
 6
 Finding that plaintiff did not engage in misconduct prejudicial to defendant, the jury returned a verdict in his favor for a total of $183,927.30, consisting of $24,906 for relocation expenses, $151,950 for consequential damages and $7,7071.39 for business-related expenses. The business-related expenses were subsequently reduced by a remittitur to a sum of $4,975 so that the final judgment was $181,835. Defendant has appealed the judgment in plaintiff's favor. We affirm.
 
 
 7
 I. FAILURE TO INSTRUCT ON THE MEANING OF PREJUDICIAL MISCONDUCT.
 
 
 8
 In the pretrial report defendant requested an instruction on the meaning of prejudicial misconduct (App. 15). However, the district judge refused to give it. his In his opinion denying defendant's motion for judgment as a matter of law and its motion for a new trial, the district judge explained that there is no accepted meaning of the term "prejudicial misconduct," which was also undefined in defendant's "Foreign Service Manual." Therefore, Judge Gordon felt that any defining instruction would have invaded the province of the jury. (App. 10)
 
 
 9
 Plaintiff contends that any error concerning the failure to give its jury instruction was waived by defendant's failure to make an objection at the jury instruction conference, in accordance with Rule 51 of the Federal Rules of Civil Procedure. We agree with defendant that Rule 51 must be read in conjunction with Rule 46, which provides that formal objections are unnecessary if a party's position has been made clear to the court. Defendant had requested a jury instruction on the meaning of prejudicial misconduct and the court stated that it was not going to define those words because their meaning was self-explanatory and any definition would be redundant and invade the jury's province (R. 43 at 151; R. 37 at 8). Consequently, the issue was sufficiently presented so as to obviate a specific objection. Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Maryland, 202 F.2d 794, 800-801 (7th Cir.1953); Brown v. Avemco Inv. Corp., 603 F.2d 1367, 1371 (9th Cir.1979). In any event, the district judge was justified in refusing the defendant's instruction because it defined the term as requiring "only the potential for compromising" the defendant's interest (App. 15), and defendant has not persuaded us that this definition was proper. The term at issue is ambiguous and has no accepted meaning. In such a circumstance, the defendant is not entitled to have a definition construing the term broadly, and decidedly in its favor, presented to the jury. Having failed to define the term in the manual it presented to its employees, the defendant may not correct its error at trial. Cf. Capital Investments v. Whitehall Packaging Co., 91 Wis.2d 178, 190, 280 N.W.2d 254 (1979) (ambiguity in contract should be construed against drafter).
 
 
 10
 II. PLAINTIFF'S RECOVERY OF CONSEQUENTIAL DAMAGES IN THE FORM OF LOST EARNINGS.
 
 
 11
 The jury found that plaintiff's financial inability to return to the United States and find employment here entitled him to compensation for lost earnings resulting from defendant's breach of its promise to pay relocation expenses. Under Wisconsin law, although an at-will employee such as the plaintiff may be discharged for any reason, an employer is still responsible for the promises made to the at-will employee. See Reimer v. Badger Wholesale Co. Inc., 147 Wis.2d 389, 393, 433 N.W.2d 592 (Ct.App.1988). Defendant acknowledges that if plaintiff was not discharged for misconduct, he is entitled to relocation expenses. (Br. 22). Defendant, in other words, acknowledges that a binding promise existed, but denies that it should have to pay the consequential damages resulting from its breach. In Wisconsin, however, plaintiff is entitled to those damages that are natural and probable consequences of a breach of promise, Handicapped Children's Education Board v. Lukaszewki, 112 Wis.2d 197, 200, 332 N.W.2d 774 (1983), here the lost earnings as a result of defendant's failure to pay relocation expenses. Plaintiff was left stranded in Peru, where as a foreign resident he was unable to obtain a job. Since the jury found that the defendant's breach resulted in plaintiff's being unable to obtain suitable employment, he was entitled to recover his lost income.
 
 
 12
 III. PROPRIETY OF SUSTAINING PLAINTIFF'S HEARSAY OBJECTIONS TO PROPOSED TESTIMONY OF DEFENDANT'S WITNESS.
 
 
 13
 Eugene Hoskins was defendant's former Director of Human Resources. He and another defense witness, John Westerman, testified to their reasons for discharging Veltze. Nevertheless, defense counsel asked Hoskins to relate whom he had contacted and what those persons had told him about plaintiff and his company, International Markets. Plaintiff's objection was sustained. In accordance with Rule 403, the trial judge properly excluded the evidence, stating:
 
 
 14
 Notwithstanding the defendant's assurance that such testimony was not offered for the truth of the matter asserted, I determined, in the exercise of my discretion under Rule 403, Federal Rules of Evidence, that such testimony would prejudice the plaintiff's case because there was a substantial likelihood that the jury would misinterpret the purpose of the evidence and treat it as true (App. 9).
 
 
 15
 Moreover, defendant did not show that the declarants, employees of defendant, were unavailable which otherwise might have justified admitting the evidence. See Fed.R.Evid. 403 advisory committee's note ("The availability of other means of proof may also be an appropriate factor."). Finally, and most importantly, as the defendant did not make an offer of proof regarding what the hearsay evidence would show--and the substance of the evidence was not sufficiently apparent from the context within which the questions were asked--the defendant has failed to demonstrate that it was harmed by exclusion of the evidence. Therefore error may not be predicated on the court's ruling. See Fed.R.Evid. 103.
 
 
 16
 JUDGMENT AFFIRMED.
 
 
 
 *
 Honorable James B. Zagel, U.S. District Judge for the Northern District of Illinois, Eastern Division, is sitting by designation
 
 
 [1]
 The suit was first filed in a Wisconsin state court but removed by defendant to the district court under 28 U.S.C. §§ 1332 and 1441