678 So.2d 378 (1996)
CNA INTERNATIONAL REINSURANCE COMPANY, LTD., As Subrogee of Shapray Limited, Dark Blood, Inc., New Line Cinema, Inc., British Screen Finance, Ltd., Berliner Bank, Screen Partners and Film Finances, Inc., Appellants,
v.
Arlyn PHOENIX, as Personal Representative of The Estate of River J. Phoenix, Appellee.
AMERICAN CASUALTY COMPANY OF READING, PA., As Subrogee of Time Warner, Inc., Appellant,
v.
Arlyn PHOENIX, as Personal Representative of the Estate of River J. Phoenix, Appellee.
Nos. 95-2309, 95-401.
District Court of Appeal of Florida, First District.
July 2, 1996.
Rehearing Denied September 11, 1996.
John Beranek of Macfarlane Ausley Ferguson & McMullen, Tallahassee; Carl B. Schwait of Dell, Graham, Willcox, Barber, Jopling, Comfort, Schwait & Gershow, Gainesville, for Appellants.
David J. Kohs of Wright & Kohs, P.A., Orlando; Cynthia J. Pyles, Orlando, for Appellee.
JOANOS, Judge.
In these consolidated appeals from final orders granting appellee's motions to dismiss, appellants raise two issues: (1) whether the defense of impossibility of performance due to death applies when the impossibility is, allegedly, the fault of the person obligated to perform the personal services contract, *379 and (2) whether the trial court erred in ruling that the effective dates of the policies of insurance involved here were in November, 1993, after the widely publicized death in question. We affirm in part and reverse in part.
The case arises from the unfortunate death of the young actor, River Phoenix, originally of Gainesville, Florida, apparently due to an overdose of illegal drugs, before completion of two films, "Dark Blood" and "Interview With the Vampire," in which he had contracted to appear. As a result of the death, the "Dark Blood" project was totally abandoned. "Interview With the Vampire" was completed with another actor replacing Phoenix. CNA and American Casualty, which are both members of the CNA group of insurance companies, had written entertainment package insurance policies covering various aspects of the two productions. After paying the policy holders, CNA and American Casualty became subrogated to the claims the insureds had against the estate.[1]
CNA attempted to state a cause of action for breach of contract against Phoenix's estate, based on an "actor loanout agreement," between Jude Nile, a corporation owned and run by Phoenix and his mother, Arlyn Phoenix, and Scala Productions.[2] The agreement, signed by Phoenix, allegedly included a general obligation not to do anything which would deprive the parties to the agreement of its benefits. CNA further alleged that by deliberately taking illegal drugs in quantities in excess of those necessary to kill a human being, Phoenix deprived the parties of his services and breached his obligation. American Casualty also couched its complaint for declaratory judgment in terms of breach of contract based on an actor loanout agreement between Jude Nile and Geffen Pictures, which gave Geffen the right to loan Phoenix to Time Warner. In addition to the count for breach of contract, the CNA complaint contained a second count, for fraud and misrepresentation, based on an allegedly false representation in a medical certificate, allegedly signed by Phoenix, denying that Phoenix had ever used "LSD, heroin, cocaine, alcohol in excess, or any other narcotics, depressants, stimulants or psychedelics whether prescribed or not prescribed by a physician."
The estate moved to dismiss both complaints, contending there could be no cause of action for breach of contract because the personal services contracts were rendered impossible to perform due to the death. The estate further alleged that reliance on any representation in the medical certificate was unreasonable as a matter of law as of the effective dates of the policies, which it contended were in November, 1993, after the widely publicized death on October 31, 1993. After hearings, the trial court granted the motions to dismiss with prejudice.
On appeal, CNA and American Casualty contend that the defense of impossibility of performance does not apply in this case because that doctrine requires that the impossibility be fortuitous and unavoidable, and that it occur through no fault of either party. They contend that because the death occurred from an intentional, massive overdose of illegal drugs, that this is not a situation in which neither party was at fault. The trial court very clearly ruled that even if the death was a suicide (there is no indication in the record that it was) or the result of an intentional, self-inflicted act, the doctrine of impossibility of performance applied.
Appellants have candidly conceded that no case authorities exist in support of their position concerning fault in a case of impossibility due to death. Appellants ask this court to find support for their theory in the following language of the Restatement of Contracts 2d §§ 261 and 262:
§ 261 Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary. *380 § 262 If the existence of a particular person is necessary for the performance of a duty, his death or such incapacity as makes performance impracticable is an event the nonoccurrence of which was a basic assumption on which the contract was made.
Appellants contend the Restatement dictates that impossibility of performance due to the destruction of one's own health is not the sort of conduct that will excuse performance, citing Handicapped Children's Education Board v. Lukaszewski, 112 Wis.2d 197, 332 N.W.2d 774 (Wis.1983), and that the same reasoning should apply in a case of self-induced death. Appellants also suggest a policy basis for the ruling they advocate, arguing that in a society dealing with increasing problems created by illegal drug abuse, such conduct should not excuse the performance of the contract.
At oral argument of this case, it became apparent that any attempt to discern fault in a death case such as this one, or in a similar case, perhaps involving the use of tobacco or alcohol would create another case by case and hard to interpret rule of law. Being mindful that there are already too many of these in existence, we are not persuaded by the facts or the arguments presented to depart from the clear and unambiguous rule that death renders a personal services contract impossible to perform. See 17A Am.Jur.2d "Contracts" § 688 (1991). In such contracts, "there is an implied condition that death shall dissolve the contract." Id. With this implied condition in mind, we believe the parties to the agreements could have provided specifically for the contingency of loss due to the use of illegal drugs, as they provided for other hazardous or life threatening contingencies.[3] We affirm the trial court's ruling that the doctrine of impossibility of performance applies in this case.
We reverse the trial court's ruling that, as a matter of law, the policies were not effective until the issuance date, November 12, 1993, after Phoenix's death on October 31, 1993. The policies, as well as pertinent endorsements, clearly reflect earlier effective dates of July 23, 1993, and August 15, 1993 on their faces. Generally, the parties to a contract are competent to fix the effective date. See John A. Appleman and Jean Appleman, Insurance Law and Practice § 105 (1981).[4] At the very least, further development of the record is in order on this issue.[5]
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
BOOTH and VAN NORTWICK, JJ., concur.
NOTES
[1] CNA paid out over $5.7 million under its policy. American Casualty had not yet paid all claims, and sought a declaratory judgment on the coverage issue. It had paid out $15,000 of approximately $400,000 in claims.
[2] Scala Productions, Ltd., the production company for "Dark Blood," later assigned its rights to Shapray Ltd. The additional appellants in case no. 95-401 provided financing or other services for that production.
[3] For example, the actor loanout agreement pertaining to "Interview With the Vampire" provided:

From the date two (2) weeks before the scheduled start date of principal photography until the completion of all services required of Employee hereunder, Employee will not ride in any aircraft other than as a passenger on a scheduled flight of a United States or other major international air carrier maintaining regularly published schedules, or engage in any ultrahazardous activity without Producer's written consent in each case.
The entertainment package policies contained exclusions based on similar activities.
[4] In addition to responding to the two issues specifically raised, appellee, in an effort to support the trial court's ruling, asserts several additional theories, which we address briefly. Appellee contends one of the policies was not valid until countersigned; however, the countersignature requirement can be waived under certain circumstances. See 17 John A. Appleman and Jean Appleman, Insurance Law and Practice § 9581 (1981). Thus it appears the absence of a countersignature does not mean, as a matter of law, that the policy was not valid until the issuance date. Similarly, the adequacy of Phoenix's signature on one side of the medical certificate cannot be decided at this point as a matter of law. We also reject the contention that § 627.408(1), Fla. Stat., required the medical certificate to be attached to the policy. The language of that section, which pertains to life and health insurance, does not appear to apply in this case. We reject any additional arguments not specifically addressed here.
[5] Finally, we note that American Casualty sought a declaratory judgment on the coverage issue, and was entitled to a declaration regardless of whether it prevailed on the coverage issue. See State Farm v. Hinestrosa, 614 So.2d 633 (Fla. 4th DCA 1993).