Mr. Harry A. Jones Legal Counsel, North Brevard County Hospital District 951 North Washington Avenue Titusville, Florida 32796-2194
Dear Mr. Jones:
On behalf of the North Brevard County Hospital District Board of Directors, you have asked for my opinion on substantially the following questions:
1. May the North Brevard County Hospital District Board of Directors enter into a binding contract to designate a successor chief executive officer for the Parrish Medical Center where that contract will become effective after December 31, 2000?
2. May the North Brevard County Hospital District Board of Directors enter into such a contract if the term of the contract will extend beyond the term of office of the members of the current board?
In sum:
1. There is no legal impediment to the North Brevard County Hospital District Board of Directors entering into such a written contract, and this office will express no comment on the wisdom of entering into a binding contract that will become effective more than a year in the future.
2. The North Brevard County Hospital District is not authorized to enter into an employment contract for a president and chief executive officer for the Parrish Medical Center when that contract will extend beyond the terms of office of the members of the current board.
According to your letter, the president and chief executive officer of Parrish Medical Center has advised the North Brevard County Hospital District Board of Directors that he will not renew his employment agreement when it expires on December 31, 2000. To assure a smooth transition of management, the board proposes to enter into an employment agreement with the person who is currently the chief operating officer of Parrish Medical Center in order to designate that person as the successor chief executive officer. The proposed employment agreement would be for a term ending December 31, 2003, which is beyond the terms of the current members of the board of directors.[1]
The North Brevard County Hospital District was created by Chapter 28924, Laws of Florida (1953), for the purpose of equipping, maintaining, and operating a hospital in Brevard County. That hospital is known as the Parrish Medical Center.
The district is an independent special taxing district whose revenue source is ad valorem taxes and which has the authority to issue bonds.[2] The district's enabling legislation authorizes it to enter into contracts[3] and "to appoint and hire such agent or agents, technical experts, attorneys and all other employees, as are necessary for carrying out the purposes of this Act and to prescribe their salaries and duties."[4]
Question One
Your first question relates to the authority of the board of directors to enter into a binding employment contract, the terms of which will not become effective for more than one year. Generally, parties to a contract are competent to fix the effective date of such a contract.[5] It is a fundamental principle of American jurisprudence that parties sui juris may make any contract they desire so long as it does not violate any law or public policy of the state.[6]
While the wisdom of entering into a binding employment contract for a term commencing more than one year in the future is questionable, I am aware of no legal impediment to such a contract so long as it is a written contract.[7]
Question Two
Your second question involves the authority of the board of directors of the district to contract for a period extending beyond the term of office of the current board members. As discussed above, the district is authorized by its enabling legislation to enter into contracts. However, nothing in the special act creating the district or subsequent amendments to the act addresses the term of any such contracts.
The issue of the validity of a contract executed by a governmental entity extending beyond the term of office for the officers making the contract occurs most frequently in Florida case law relating to municipalities.[8] The general rule is, and in the past the rule in Florida was, that the governing body of a municipality could not enter into a contract that extended beyond the term of office of the members if the subject matter of the contract was governmental, but could enter into a contract that extended beyond the members' term of office if the subject matter was proprietary and the contract was reasonable in the length of time for which it was to extend.[9] The rationale for this rule is:
"[W]here the contract involved relates to governmental or legislative functions of the council, or involves a matter of discretion to be exercised by the council unless the statute conferring power to contract clearly authorizes the council to make a contract extending beyond its own term, no power of the council so to do exists, since the power conferred upon municipal councils to exercise legislative or governmental functions is conferred to be exercised as often as may be found needful or politic, and the council presently holding such powers is vested with no discretion to circumscribe or limit or diminish their efficiency, but must transmit them unimpaired to their successors. But in the exercise of the business powers of a municipal corporation, the municipality and its officers are controlled by no such rule. . . ." (e.s.)[10]
While this general rule distinguishing between governmental and proprietary powers has been abrogated for municipalities in Florida with the passage of the Municipal Home Rule Powers Act,[11] the public policy concerns it addressed apply equally to such governmental entities as independent special districts. As the North Brevard County Hospital District is an independent special district created by the Legislature to serve a public purpose and given general governmental powers, it is within the purview of this principle.[12] Accordingly, the validity of the proposed contract for the employment of a president and chief executive officer depends upon the proprietary or governmental nature of the subject matter of the contract.
As Florida courts have recognized, there is no precise dividing line between the exercise of governmental and proprietary functions. They are difficult to distinguish between and tend to overlap.[13] In Daly v. Stokell,[14] the Florida Supreme Court distinguished the two concepts as follows;
"We understand the test of a proprietory [sic] power to be determined by whether or not the agents of the city act and contract for the benefit and welfare of its people; any contract, in other words, that redounds to the public or individual advantage and welfare of the city or its people is proprietory [sic], while a governmental function, as the term implies, has to do with the administration of some phase of government, that is to say, dispensing or exercising some element of sovereignty."
Clearly then, it is the nature of the duties to be performed by the prospective employee that determines whether the contract of employment of such a person represents an exercise of proprietary or governmental powers by the contracting governmental body. Other relevant factors include the extent to which the employee serves in a confidential relationship with the governing body[15] and the extent to which the governing body exercises supervisory control over the employee.[16]
In City of Riviera Beach v. Witt,[17] the court held that the employment of a city prosecutor was a governmental and not a proprietary function. Therefore, an employment contract that purported to extend beyond the terms of office of the contracting officers could not effectively bind their successors. In reaching this conclusion, the court stated:
"The operation of a Municipal Court by the City under its charter and the employment of a City Prosecutor to prosecute all persons arrested and brought to trial before the court for the violation of municipal ordinances `has to do with the administration of some phase of government, that is to say, dispensing or exercising some element of sovereignty'. . . . The employment of a City Prosecutor, in our opinion, relates to the performance of a governmental function; the employment of a City Prosecutor cannot be considered as having been made in the exercise of the City's business or proprietary powers, as that phrase is commonly understood."[18]
Similarly, a Pennsylvania Supreme Court case, Mitchell v. ChesterHousing Authority,[19] held that a five-year contract of employment between a municipal housing authority and its secretary-executive director was invalid and unenforceable. The court noted that testimony at trial described the secretary-executive director as the "chief officer" and "right arm" of the housing authority and that the secretary-executive director was in charge of implementing the policies of the housing authority and administering its business. In reaching a decision, the court stated:
"The principle . . . is clear, namely, good administration requires that the personnel in charge of implementing the policies of an agency be responsible to, and responsive to those charged with the policy-making function, who in turn are responsible to a higher governmental authority, or to the public itself, whichever selected them. This chain of responsibility is the basic check on government possessed by the public at large. A contract which will have the effect of, and indeed appears to have been executed with the express purpose of, violating this rule runs counter to public policy and will not be enforced against the public interest."[20]
Finally, this office, in Attorney General Opinion 77-67, considered whether the Miami Beach Housing Authority was authorized to enter into an employment contract with its secretary-executive director for a five-year period. In concluding that such a contract would be an exercise of the governmental function of the housing authority, the relationship between the authority and its executive director was considered. The relationship was determined to be a confidential and personal one in which the authority might delegate any or all of its governmental powers or duties to the executive director and he or she would be responsible for carrying out the executive function of implementing and enforcing the policies and regulations and administrative functions of the governing board. Thus, the opinion concluded that a proposed five-year employment contract between the municipal housing authority and its secretary-executive director would not be valid and enforceable.
Applying these principles to the situation presented by the North Brevard County Hospital District, it is my opinion that this independent special taxing district is not authorized to enter into an employment contract for a president and chief executive officer when that contract will extend beyond the term of office of the members of the current board. The chief executive officer of the medical center has been delegated the governmental powers and duties of the board to accomplish its purposes and carries out the executive function of implementing and enforcing the policies and regulations and administrative functions of the board of directors.[21] These duties and responsibilities fall within the scope of governmental functions as delineated by the Florida cases discussed above. Furthermore, the relationship between the president and executive director and the members of the board of directors must be characterized as confidential and personal.[22]
Therefore, in light of the governmental nature of the contract of employment being considered and the relationship between the parties, it is my opinion that the North Brevard County Hospital District is not authorized to enter into an employment contract for a chief executive officer when that contract will extend beyond the term of office of the members of the current board.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Section 2, Ch. 28924, Laws of Florida (1953), as amended by Ch. 61-1910, Laws of Florida, provides for the appointment of nine board members holding staggered four year terms. As you have advised, the terms of office of three members of the current board end on each of the following dates: 12/31/99, 12/31/00 and 12/31/01.
[2] See, the 1998-1999 Official List of Special Districts, Florida Department of Community Affairs, published October 1, 1998.
[3] See, s. 2, Ch. 28924, Laws of Florida (1953), as amended by Ch. 61-1910, Laws of Florida, and Ch. 73-409, Laws of Florida.
[4] See, s. 11, Ch. 28924, Laws of Florida (1953). The act also provides that "[s]aid Board shall have the power to discharge all employees, or agents, when it shall be deemed by the board necessary for the carrying out of the purposes of this Act."
[5] See, CNA International Reinsurance Company, Ltd. v. Phoenix,678 So.2d 378 (Fla. 1st DCA 1996), rehearing denied.
[6] See, Emergency Associates of Tampa, P.A. v. Sassano,664 So.2d 1000 (Fla. 2d DCA 1995), rehearing denied; and, see generally,
17 C.J.S. Contracts s. 190.
[7] But see, s. 725.01, Fla. Stat., Florida's statute of frauds requiring that contracts not to be performed within one year must be in writing.
[8] See, Daly v. Stokell, 63 So.2d 644 (Fla. 1953); Town ofIndian River Shores v. Coll, 378 So.2d 53 (Fla. 4th DCA 1979);Tweed v. City of Cape Canaveral, 373 So.2d 408 (Fla. 4th DCA 1979); City of Riviera Beach v. Witt, 286 So.2d 574 (Fla. 4th DCA 1973), cert. denied, 295 So.2d 305 (Fla. 1974).
[9] See generally, 63 C.J.S. Municipal Corporations s. 987, p. 549; 10 McQuillen Municipal Corporations s. 29.101, p. 492. Andsee, cases cited in n. 8 supra.
[10] See, 56 Am.Jur.2d Municipal Corporations s. 154 (1971); and Op. Att'y Gen. Fla. 83-36 (1983), discussing the authority of a municipality to enter into an insurance contract for a period of time which would bind future commissions.
[11] See, Town of Indian River Shores v. Coll, 378 So.2d 53
(Fla. 4th DCA 1979); Tweed v. City of Cape Canaveral,373 So.2d 408 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 755 (Fla. 1980); Op. Att'y Gen. Fla. 90-54 (1990) ("[t]his distinction between proprietary and governmental functions is no longer followed in Florida, in light of s. 166.021(4), F.S., securing broad municipal home rule powers to cities."); Op. Att'y Gen. Fla. 84-100 (1984).
[12] Cf., Op. Att'y Gen. Fla. 77-67 (1977) holding that a statutorily created housing authority which was an independent special district was subject to this rule.
[13] See, American Yearbook Company v. Askew, 339 F. Supp. 719,721 (M.D.Fla. 1972), aff'd 409 U.S. 904 (1972).
[14] 63 So.2d 644 (Fla. 1953).
[15] See, Douglas v. City of Dunedin, 202 So.2d 787, 789 (Fla. 2d DCA 1967).
[16] See, Op. Att'y Gen. Fla. 77-67 (1977).
[17] 286 So.2d 574 (Fla. 4th DCA 1973), cert. denied, Witt v.City of Riviera Beach, 295 So.2d 305 (Fla. 1974).
[18] 286 So.2d at 576.
[19] 132 A.2d 873, 880 (Pa. 1957).
[20] Ibid.
[21] See, Parrish Medical Center Policy No. 9500-109, designating the respective roles of the board and the president-chief executive officer in various areas of hospital administration; and Article IV, North Brevard County Hospital District Board Bylaws, s. 4.1, which provides that the chief executive officer is "the direct executive representative of the Board of Directors in the management of the Hospital."
[22] Ibid.