GRIFFIS, J,
 

 for the Court:
 

 ¶ 1. C. Jake Lambert Jr., M.D., filed suit against Baptist Memorial Hospital-North Mississippi, Inc. (“Hospital”) and Baptist Memorial Health Services, Inc. (“Baptist Health Services”) after he was terminated from his position as a heart surgeon. The Lafayette County Circuit Court found that Dr. Lambert had failed to raise a genuine issue of material fact; therefore, summary judgment was granted for the Hospital and Baptist Health Services. Dr. Lambert appeals claiming that summary judgment was improper as to his claims for breach of contract, defamation, and intentional infliction of emotional distress. We find no error and affirm.
 

 FACTS
 

 ¶ 2. Dr. Lambert signed an employment agreement with Baptist Health Services on February 26, 2004. He agreed to provide cardio-thoracic-surgery services to the Hospital located in Oxford, Mississippi. Almost immediately after Dr. Lambert’s employment began, the Hospital began to receive complaints from staff and patients about Dr. Lambert’s angry and abusive behavior. They reported his demeaning attitude, insecurity and hesitancy in decision making, hand shaking, freezing up during surgery, and anger toward patients and their families.
 

 ¶ 3. After numerous complaints about Dr. Lambert’s anger issues were filed, Zach Chandler, the Hospital’s CEO, requested that Dr. Lambert attend a discretionary interview. At the interview, Dr. Lambert agreed to be referred to the Mississippi Professional Health Program (“MPHP”). The MPHP then referred him to Dr. Edward Anderson at Pine Grove
 
 *801
 
 Recovery Center in Hattiesburg, Mississippi.
 

 ¶ 4. Dr. Lambert was evaluated by Dr. Anderson on December 15, 2004. Dr. Anderson submitted his detailed evaluation to the Hospital. Dr. Anderson made the following recommendations:
 

 1. Dr. Lambert should enter a monitoring contract with Dr. Gary Carr and the Mississippi Professionals Health Program for a period of no less than five years. This monitoring should include parameters of disruptive physician behavior as well as monitoring of his surgical performance, due to the fact that there have been several occasions on which his team has felt he has “frozen up” during the surgical process.
 

 2. Dr. Lambert should enter an intensive, structured treatment to address the disruptive behavior described above and his underlying personality disorder. The treatment program should be one approved by the Mississippi Professionals Health Program.
 

 3. Dr. Lambert, the administration of Baptist Hospital of North Mississippi, or the Mississippi Professionals Health Program are invited to seek a second opinion, should they disagree with these findings or recommendations.
 

 The report also stated the following findings under the heading titled “Diagnostic Impressions”:
 

 Axis I. 1. Obsessive-Compulsive Personality Disorder. (Axis II issues is the primary presenting problem and is causing impairment at the level of an Axis I issue with acute and chronic manifestations.).
 

 2. Occupational Problem
 

 Axis II. See above
 

 R/O paranoid features
 

 Axis III. None
 

 Axis IV. Severe primarily related to occupational issues.
 

 Axis V. Highest level of adaptive functioning at the time of the evaluation was a GAF of 40 with serious impairment in occupational functioning.
 

 ¶ 5. Chandler testified that he was concerned about some of the language in the diagnosis, specifically, the phrase “serious impairment in occupational functioning.” Chandler stated that he did not understand the meaning of the Axis levels or the term GAF. Chandler contacted Dr. Anderson for clarification of the report. Dr. Anderson filed an addendum, which stated:
 

 It is our impression that Dr. Lambert is currently unfit to practice medicine with reasonable skill and safety, based on the report of a credible source that he has “frozen up” on three separate occasions in the midst of a surgical procedure. However, this is based upon a secondhand report. Dr. Lambert would not allow us consent to speak with the original sources to verify this report.... We believe that Dr. Lambert needs intensive treatment as quickly as possible.
 

 ¶ 6. Based on Dr. Anderson’s conclusion that Dr. Lambert was unfit to practice medicine, the Hospital suspended Dr. Lambert’s staff privileges. A letter from the Hospital informed Dr. Lambert that his staff privileges were suspended pending successful completion of a treatment program recommended by Dr. Anderson or the MPHP. The letter also stated that the staff privileges may be reinstated subject to supervision and a probationary period upon Dr. Lambert’s successful completion of a treatment program. The Hospital informed Dr. Lambert that he was entitled to apply for a hearing under the Hospital’s Fair Hearing Plan.
 

 ¶ 7. Baptist Health Systems then terminated Dr. Lambert’s employment due to
 
 *802
 
 the suspension of his staff privileges at the Hospital. Dr. Lambert’s employment contract specifically states that Baptist Health Systems may terminate the contract for cause due to the termination or restriction of Dr. Lambert’s clinical privileges at the Hospital. The notice of termination provided that Dr. Lambert had the option to use Baptist Health Systems’ Problem Solving Procedure. Dr. Lambert never exercised his rights to a hearing; indeed, his attorney waived those rights.
 

 ¶ 8. On January 12, 2006, Dr. Lambert filed a complaint against the Hospital, Baptist Health Systems, Dr. Anderson, and Forrest General Health Services, Inc. d/b/a Pine Grove Recovery Center. Pine Grove and Dr. Anderson were dismissed due to Dr. Lambert’s failure to comply with the requirements of the Mississippi Tort Claims Act.
 

 ¶ 9. Dr. Lambert’s complaint set forth claims of breach of contract, tortious interference with a business and/or contractual relationship, negligence, intentional infliction of emotional distress, defamation, breach of the implied covenant of good faith and fair dealing, due-process violation, and punitive damages.
 

 ¶ 10. Both the Hospital and Baptist Health Systems filed motions for summary judgment. They claimed that each of Dr. Lambert’s claims were based on the allegation that the Hospital had a duty to investigate the findings in Dr. Anderson’s report, which were the bases for the suspension of Dr. Lambert’s staff privileges. They argued that Dr. Lambert had failed to prove that such duty existed; therefore, Dr. Lambert’s claims must fail. The circuit court agreed and granted summary judgment for both defendants.
 

 STANDARD OF REVIEW
 

 ¶ 11. We review the circuit court’s granting of summary judgment using a de novo standard of review.
 
 Richmond v. Benchmark Const. Corp.,
 
 692 So.2d 60, 61 (Miss.1997). Summary judgment is proper when “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 
 Byrne v. Wal-Mart Stores, Inc.,
 
 877 So.2d 462, 464-65 (¶ 3) (Miss.Ct.App.2003). “We have to review the facts presented to determine if there is a genuine issue of material fact and, if such fact exists, whether that fact is outcome determinative.”
 
 Evans v. Jackson Coca-Cola Bottling Co.,
 
 771 So.2d 1006, 1009 (¶ 10) (Miss.Ct.App.2000).
 

 ANALYSIS
 

 ¶ 12. Dr. Lambert argues that summary judgment was not proper as to three of his claims: (1) breach of contract, (2) defamation, and (3) intentional infliction of emotional distress. We review each of these claims separately.
 

 1. Breach of Contract
 

 ¶ 13. The employment agreement unambiguously provides that Baptist Health Systems could terminate the agreement for cause upon the termination or restriction of Dr. Lambert’s staff privileges at the Hospital. There is no dispute that this was the reason for the termination of the agreement. Dr. Lambert does not allege a breach of the terms of the contract; instead, he claims that Baptist Health Systems breached the implied covenant of good faith and fair dealing in the performance and enforcement of the contract.
 

 ¶ 14. Specifically, Dr. Lambert states that Baptist Health Systems terminated his employment based on Dr. Anderson’s
 
 *803
 
 report before Dr. Lambert was given the opportunity to seek a second opinion. Dr. Lambert asserts that he should have been given a medical leave of absence before the agreement was terminated. Underlying this argument is Dr. Lambert’s assertion that the Hospital improperly relied upon Dr. Anderson’s report. Dr. Lambert claims that the report and the addendum are contradictory because the report recommends that he enter into a monitoring contract while the addendum states that he is unfit to practice medicine.
 

 ¶ 15. In response, Baptist Health Systems and the Hospital claim that Dr. Lambert has failed to show that they breached any duty. The Hospital claims that it was in full compliance with its bylaws, as well as federal and state laws when it suspended Dr. Lambert’s staff privileges based on Dr. Anderson’s report. The suspension then gave Baptist Health Systems the full authority under the employment contract to terminate Dr. Lambert’s employment.
 

 ¶ 16. In his complaint, Dr. Lambert asserted that the Hospital had the duty to investigate the findings in Dr. Anderson’s report before it suspended his staff privileges. Dr. Lambert fails to cite any basis for this duty. The Hospital had numerous documented complaints by members of its staff and patients of Dr. Lambert. The Hospital was well aware of Dr. Lambert’s anger issues. Most disturbingly, the staff reported that Dr. Lambert would freeze up in surgery until another member of the surgical staff was able to get him back on task. Based upon his thorough examination of Dr. Lambert and the documented complaints, Dr. Anderson concluded that Dr. Lambert was unfit to practice medicine.
 

 ¶ 17. Based on Dr. Anderson’s report, the Hospital determined there was a need to protect the Hospital’s patients. The Hospital suspended Dr. Lambert’s staff privileges. Dr. Lambert has not asserted that the complaints against him are unsubstantiated. Dr. Lambert has not asserted that Dr. Anderson’s report was based on false information. Dr. Lambert merely asserts that he should have been afforded the opportunity to seek a second opinion before the Hospital took action. However, Dr. Lambert has failed to provide any support for his argument that the Hospital owed him such a duty.
 

 ¶ 18. Baptist Health Systems’ actions did not breach the implied covenant of good faith and fair dealing because Baptist Health Systems exercised its contractual right to terminate the agreement. The issue of whether a party can act in bad faith by exercising a contractual right to terminate an agreement was addressed in
 
 Limbert v. Mississippi University for Women Alumnae Association, Inc.,
 
 998 So.2d 993, 998 (Miss.2008). There, the supreme court held:
 

 All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement.
 
 Morris v. Macione,
 
 546 So.2d 969, 971 (Miss.1989). Good faith has been defined as “the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party.”
 
 Cenac v. Murry,
 
 609 So.2d 1257, 1272 (Miss.1992). Bad faith has been defined by this Court as requiring “a showing of more than bad judgment or negligence; rather, ‘bad faith’ implies some conscious wrongdoing ‘because of dishonest purpose or moral obliquity.’ ”
 
 Univ. of S. Miss. v. Williams,
 
 891 So.2d 160, 170-71 (Miss.2004) (quoting
 
 Bailey v. Bailey,
 
 724 So.2d 335, 338 (Miss.1998)).
 

 Id.
 

 ¶ 19. In
 
 Limbert,
 
 the appellant exercised her express right to terminate an agreement by giving sixty days’ notice to
 
 *804
 
 the other party. The supreme court noted that there had been no attack on the validity of the agreement. Further, the supreme court ruled that: “This Court has held that a party has not breached the implied covenant of good faith and fair dealing when the party ‘took only those actions which were duly authorized by the contract.’ ”
 
 Id.
 
 at 999 (¶ 14) (quoting
 
 GMAC v. Baymon,
 
 732 So.2d 262, 269 (Miss.1999)). The appellant did not act in bad faith by merely exercising her contractual right to terminate the agreement.
 
 Id.
 

 ¶ 20. Here, we must reach the same conclusion. Baptist Health Systems did not act in bad faith when it exercised its right to terminate Dr. Lambert’s employment agreement upon the suspension of his staff privileges. Dr. Lambert has shown no breach of either an express or implied contractual duty by Baptist Health Systems or the Hospital. The circuit court correctly granted summary judgment as to Dr. Lambert’s breach-of-contract claim. Accordingly, this issue has no merit.
 

 2. Defamation
 

 ¶ 21. Dr. Lambert next contends that he was defamed when the Hospital reported his suspension to the National Practitioners Data Bank (“data bank”). The report indicated that Dr. Lambert had been suspended because he was “unable to practice safely.” Dr. Lambert claims that this statement is false because Dr. Anderson’s addendum should be interpreted to mean that he could practice if he followed Dr. Anderson’s recommendation of entering a monitoring contract.
 

 ¶ 22. In
 
 Smith v. Magnolia Lady, Inc.,
 
 925 So.2d 898, 904-05 (¶ 20) (Miss.Ct.App.2006), this Court held:
 

 In order to succeed on a claim of defamation, a plaintiff must prove: (1) a false and defamatory statement concerning plaintiff; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of statement irrespective of special harm or existence of special harm caused by publication. The threshold question in a defamation suit is whether the published statements are false. A statement is defamatory when it tends to injure one’s reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community. Truth is a complete defense to libel or slander.
 

 (Internal citations and quotations omitted).
 

 ¶ 23. The alleged defamatory statement is that Dr. Lambert was unable to practice medicine safely. This was Dr. Anderson’s conclusion, and Dr. Lambert has not presented evidence to show that the statement was false. Dr. Lambert argues that Dr. Anderson’s report was inconsistent, but he fails to prove the falsehood of the statement at issue. The Hospital had documented several instances when Dr. Lambert’s anger had caused him to freeze up in surgery. He belittled the staff; he was indecisive; and he showed anger to the patients and staff. Such behavior worried the staff and caused the Hospital to fear for the safety of its patients. Dr. Lambert did not refute the reports by the staff. Because Dr. Lambert has failed to provide evidence of a false statement, summary judgment on his claim of defamation was proper. Accordingly, this issue has no merit.
 

 3. Intentional Infliction of Emotional Distress
 

 ¶ 24. Dr. Lambert argues that summary judgment was improper as to his claim of intentional infliction of emotional distress. He asserts that the Hospital and Baptist Health Systems intentionally
 
 *805
 
 breached his employment agreement, took away his livelihood, and intentionally presented false information to the data bank stating that he was unfit to practice medicine. Dr. Lambert argues that those actions combined amount to the extreme and outrageous conduct required to prove intentional infliction of emotional distress.
 

 ¶ 25. Intentional infliction of emotional distress results when the actions of the defendant were “wanton and willful and evoked outrage or revulsion.”
 
 Riley v. F.A. Richard & Assocs., Inc.,
 
 16 So.3d 708, 719 (¶ 33) (Miss.Ct.App.2009). “The severity of the acts must be ‘so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.’ ”
 
 Id.
 
 (quoting
 
 Speed v. Scott,
 
 787 So.2d 626, 630 (¶ 18) (Miss.2001)).
 

 ¶26. Dr. Lambert states that termination alone may not be outrageous conduct. Essentially, he claims that the outrageous conduct was the Hospital’s report to the data bank. However, Dr. Lambert provides no evidence that this action was outrageous conduct. On the contrary, the Hospital relied on the professional opinion of Dr. Anderson who, in a detailed report, found that Dr. Lambert’s occupational functioning was seriously impaired.
 

 ¶27. The Hospital informed Dr. Lambert that his staff privileges were suspended so Dr. Lambert could receive necessary treatment. The Hospital found that the suspension was necessary because Dr. Lambert’s actions were “detrimental to patient safety.” Further, the Hospital found that Dr. Lambert’s inability to work with and relate to other staff members in a professional manner was a violation of the Hospital’s medical staff bylaws. The suspension letter informed Dr. Lambert that his suspension would be reportable to the data bank.
 

 ¶ 28. Dr. Lambert has presented no evidence of conduct by the Hospital or Baptist Health Systems that is so outrageous that it goes beyond all possible bounds of decency. As such, there is no genuine issue of material fact as to his claim for intentional infliction of emotional distress. Therefore, this issue has no merit.
 

 ¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.