**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2013-CA-01002-COA**

BAPTIST MEMORIAL HOSPITAL - NORTH          APPELLANTS
MISSISSIPPI, INC., AND BAPTIST MEMORIAL
HEALTH SERVICES, INC.

v.

C. JAKE LAMBERT, M.D.                                         APPELLEE

DATE OF JUDGMENT:                 05/16/2013
TRIAL JUDGE:                             HON. ANDREW K. HOWORTH
COURT FROM WHICH APPEALED:  LAFAYETTE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:     STEPHAN L. MCDAVID
                                                REBECCA LYNN WILKS
ATTORNEYS FOR APPELLEE:         CHARLES M. MERKEL JR.
                                                EDWARD P. CONNELL JR.
NATURE OF THE CASE:                CIVIL - TORTS - OTHER THAN PERSONAL
                                                INJURY AND PROPERTY DAMAGE
TRIAL COURT DISPOSITION:          GRANTED APPELLEE'S MOTION FOR
                                                SUMMARY JUDGMENT
DISPOSITION:                            AFFIRMED - 01/27/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

     **EN BANC.**

     **ROBERTS, J., FOR THE COURT:**

¶1.     In 2006, Dr. Jake Lambert filed a complaint in the Lafayette County Circuit Court

against several parties, including Baptist Memorial Hospital North Mississippi Inc. (Hospital)

and Baptist Memorial Health Services Inc. (collectively Baptist), related to his termination.

Baptist filed a counterclaim against Dr. Lambert alleging he breached his employment

contract.  The circuit court granted summary judgment on Dr. Lambert's complaint in favor

of Baptist; however, Baptist's counterclaim was not addressed at that time, nor was it addressed in the first appeal.[1] Subsequently, Baptist pursued its counterclaim, but the circuit court granted summary judgment on the issue to Dr. Lambert, which Baptist now appeals. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. The underlying facts, as detailed in our prior opinion, are as follows:

> Dr. Lambert signed an employment agreement with Baptist Health Services on February 26, 2004. He agreed to provide cardio-thoracic-surgery services to the Hospital located in Oxford, Mississippi. Almost immediately after Dr. Lambert's employment began, the Hospital began to receive complaints from staff and patients about Dr. Lambert's angry and abusive behavior. They reported his demeaning attitude, insecurity and hesitancy in decision making, hand shaking, freezing up during surgery, and anger toward patients and their families.
>
> After numerous complaints about Dr. Lambert's anger issues were filed, Zach Chandler, the Hospital's CEO, requested that Dr. Lambert attend a discretionary interview. At the interview, Dr. Lambert agreed to be referred to the Mississippi Professional Health Program ("MPHP"). The MPHP then referred him to Dr. Edward Anderson at Pine Grove Recovery Center in Hattiesburg, Mississippi.
>
> Dr. Lambert was evaluated by Dr. Anderson on December 15, 2004. Dr. Anderson submitted his detailed evaluation to the Hospital. Dr. Anderson made the following recommendations:
>
> > 1. Dr. Lambert should enter a monitoring contract with Dr. Gary Carr and the Mississippi Professionals Health Program for a period of no less than five years. This monitoring should include parameters of disruptive physician behavior as well as monitoring of his surgical performance, due to the fact that there have been several occasions on which his team has felt he has "frozen up" during the surgical process.

---

[1] *See Lambert v. Baptist Mem'l Hosp.-N. Miss. Inc.*, 67 So. 3d 799 (Miss. Ct. App. 2011).

2. Dr. Lambert should enter an intensive, structured treatment to address the disruptive behavior described above and his underlying personality disorder. The treatment program should be one approved by the Mississippi Professionals Health Program.

3. Dr. Lambert, the administration of Baptist Hospital of North Mississippi, or the Mississippi Professionals Health Program are invited to seek a second opinion, should they disagree with these findings or recommendations.

. . . .

Dr. Anderson filed an addendum, which stated:

It is our impression that Dr. Lambert is currently unfit to practice medicine with reasonable skill and safety, based on the report of a credible source that he has "frozen up" on three separate occasions in the midst of a surgical procedure. However, this is based upon a secondhand report. Dr. Lambert would not allow us consent to speak with the original sources to verify this report. . . . We believe that Dr. Lambert needs intensive treatment as quickly as possible.

Based on Dr. Anderson's conclusion that Dr. Lambert was unfit to practice medicine, the Hospital suspended Dr. Lambert's staff privileges. A letter from the Hospital informed Dr. Lambert that his staff privileges were suspended pending successful completion of a treatment program recommended by Dr. Anderson or the MPHP. The letter also stated that the staff privileges may be reinstated subject to supervision and a probationary period upon Dr. Lambert's successful completion of a treatment program. The Hospital informed Dr. Lambert that he was entitled to apply for a hearing under the Hospital's Fair Hearing Plan.

Baptist Health Systems then terminated Dr. Lambert's employment due to the suspension of his staff privileges at the Hospital. Dr. Lambert's employment contract specifically states that Baptist Health Systems may terminate the contract for cause due to the termination or restriction of Dr. Lambert's clinical privileges at the Hospital. The notice of termination provided that Dr. Lambert had the option to use Baptist Health Systems' Problem Solving Procedure. Dr. Lambert never exercised his rights to a hearing; indeed, his attorney waived those rights.

3

On January 12, 2006, Dr. Lambert filed a complaint against the Hospital, Baptist Health Systems, Dr. Anderson, and Forrest General Health Services[] Inc. d/b/a Pine Grove Recovery Center. Pine Grove and Dr. Anderson were dismissed due to Dr. Lambert's failure to comply with the requirements of the Mississippi Tort Claims Act.

*Lambert v. Baptist Mem'l Hosp.-N. Miss. Inc.*, 67 So. 3d 799, 800-02 (¶¶2-10) (Miss. Ct. App. 2011). There was no genuine issue of material fact that Dr. Lambert was diagnosed with obsessive-compulsive personality disorder, and the report outlining his diagnosis was signed by two medical doctors: Dr. Alexis Polles and Dr. Chapman Sledge; and two licensed psychologists: Dr. Ed Anderson and Dr. Austin Smith. The circuit court granted summary judgment in favor of Baptist, and Dr. Lambert appealed. This Court affirmed the circuit court's grant of summary judgment. *Id*. at 800 (¶1).

¶3. Following this Court's decision, Baptist pursued its counterclaim in the circuit court and filed a motion for summary judgment, and a subsequent motion for declaratory judgment, or in the alternative, for partial summary judgment. The circuit court denied Baptist's motions. Dr. Lambert also filed a motion for summary judgment, which the circuit court granted, and the circuit court dismissed Baptist's counterclaim against Dr. Lambert. It found that "[b]ecause Dr. Lambert was determined to be mentally, physically, or otherwise unfit to practice medicine, and because he was terminated from his employment, this [circuit] court finds his performance under the Physician Services Agreement was legally impracticable or impossible."

¶4. Aggrieved, Baptist raises three issues on appeal:

I. Whether the [circuit] court erred in denying [Baptist's] motion for summary judgment, . . . despite there being no genuine issue of material fact and despite Lambert's failure to properly plead or substantiate his

4

affirmative defense, thereby waiving the defense.

II.  Whether the [circuit] court erred in denying [Baptist's] motion for declaratory judgment, or, in the alternative, motion for partial summary judgment, . . . despite the lack of responsive pleadings and there being no genuine issue of material fact.

III. Whether the [circuit] court erred in granting [Lambert's] motion for summary judgment, . . . despite Lambert's failure to properly plead his affirmative defense, resulting in waiver of that defense, and despite [Baptist's] showing [of] a genuine issue of material fact.

## ANALYSIS

### I.  AFFIRMATIVE DEFENSE

¶5.  Pursuant to Mississippi Rule of Civil Procedure 8(c):

[A] party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

The comment to Rule 8(c) provides that the rule's requirement that "defendants plead affirmative defenses when answering is intended to give fair notice of such defenses to plaintiffs so that they may respond to such defenses."

¶6.  Baptist argues that the circuit court erred in granting summary judgment in favor of Dr. Lambert because Dr. Lambert did not timely plead Restatement (Second) of Contracts section 261 (1961) as an affirmative defense under Rule 8(c), thereby waiving his right to rely on this as a defense.  While our research provides no caselaw regarding whether the doctrine of impossibility is an affirmative defense, it appears it would fall under the "any other matter constituting an avoidance or affirmative defense" portion of Rule 8(c).  It is

5

important to note that, while Baptist is correct that Dr. Lambert failed to plead section 261 as an affirmative defense in his answer to Baptist's counterclaim, Dr. Lambert did plead section 261 in his response to Baptist's motion to reconsider the denial of its two summary-judgment motions. And, when impossibility was pled, the fact that Dr. Lambert was unable to perform his personal-services contract due to his medical diagnosis should have come as no surprise to Baptist.

¶7. Thus, while section 261 may be an affirmative defense that was not raised in Dr. Lambert's answer, we believe that, in the interests of justice and judicial economy, the grant of summary judgment in reliance on section 261 should be affirmed. Furthermore, this case has yet to proceed to trial, since it was disposed of by the grant of summary judgments, for Baptist on the initial complaint and for Dr. Lambert on the counterclaim. If this Court were to reverse and remand the grant of summary judgment to Dr. Lambert on the ground that this affirmative defense was not raised, the case would then proceed to trial. But upon remand, there would be nothing prohibiting Dr. Lambert from filing a motion to amend his answer to the counterclaim to add this affirmative defense and reschedule the trial if necessary. Such an occurrence would simply return this case to the same posture as presently exists.

¶8. Thus, as we stated above, it is in the interest of judicial economy and in bringing finality to a lengthy dispute that we find that even though Dr. Lambert failed to raise section 261 as an affirmative defense in his answer to the counterclaim, the circuit court's reliance on section 261 when granting Dr. Lambert's motion for summary judgment was permissible.

## II. SUMMARY JUDGMENT

¶9. This Court reviews de novo a circuit court's grant of summary judgment. *Price v.*

6

*Purdue Pharma Co.*, 920 So. 2d 479, 483 (¶10) (Miss. 2006). "[W]e must examine all the evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits[,]" in the light most favorable to the nonmovant. *Id.* (citation omitted). "The movant carries the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party is given the benefit of the doubt as to the existence of a material fact issue." *Id.* (citation omitted). However, the nonmovant may not rely solely on the mere allegations or denials of his pleadings. *Id.* at 483-84 (¶10). Instead, the nonmovant's response "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 484 (¶10) (citations omitted). "If no genuine issue of material fact exists[,] and the moving party is entitled to [a] judgment as a matter of law, summary judgment should be entered in that party's favor." *Id.* at 483 (¶10) (citation omitted).

### A.    Denial of Baptist's Motions for Summary Judgment

¶10.    Baptist first argues that the circuit court erred in denying its motion for summary judgment. "[T]he denial of a motion for summary judgment is an interlocutory order[,]" and "the only means of seeking appellate review of an interlocutory order is by filing a petition with this Court under Rule 5 of the Mississippi Rules of Appellate Procedure." *Hinds Cnty. v. Perkins*, 64 So. 3d 982, 984 (¶7) (Miss. 2011); *see Holland v. Peoples Bank & Trust Co.*, 3 So. 3d 94, 104 (¶25) (Miss. 2008) ("An order denying summary judgment is neither final nor binding upon the court or successor courts."). We decline to address Baptist's issue that the circuit court erred in denying its motion for summary judgment, because it is not properly before us as an appealable issue.

### B.    Grant of Dr. Lambert's Motion for Summary Judgment

7

¶11.   Baptist next argues that the circuit court erred in granting Dr. Lambert's motion for summary judgment.  As was discussed above, the use of section 261, even though not specifically pled as an affirmative defense, as the basis for summary judgment was permissible.  Further, Baptist has failed to show there is a genuine issue of material fact.  It is undisputed that, at Baptist's request, Dr. Lambert was seen by Dr. Anderson, who diagnosed Dr. Lambert with obsessive-compulsive personality disorder and opined that, as a consequence, Dr. Lambert was "unfit to practice medicine with reasonable skill and safety[.]"  As a result of his diagnoses, Dr. Lambert's hospital privileges were suspended, which led to Baptist enforcing the termination clause of the employment agreement and terminating Dr. Lambert's employment.  As the circuit court noted, Restatement (Second) of Contracts section 261 provides:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Additionally, section 262 of the Restatement (Second) of Contracts (1981) provides: "If the existence of a particular person is necessary for the performance of a duty, his death or such incapacity as makes performance impracticable is an event the non-occurrence of which was a basic assumption on which the contract was made."

¶12.   The issue of whether a diagnosed mental illness, which was not known at the time the contract was formed, can serve as a basis to relieve a party from performance has not been addressed in our jurisprudence.  In *Handicapped Children's Education Board of Sheboygan County v. Lukaszewski*, 332 N.W.2d 774, 777 (Wis. 1983), the Wisconsin Supreme Court

8

noted that "under certain conditions[,] illness or health dangers may excuse nonperformance of a contract[,]" and that "where the act to be performed is one which the promisor alone is competent to do, the obligation is discharged if he is prevented by sickness or death from performing it." Baptist has not shown, and we cannot find, how Dr. Lambert's medical diagnosis, which was the direct cause of the suspension of Dr. Lambert's hospital privileges and subsequent termination, was his own fault or the result of his own actions. Therefore, the doctrines of impossibility and impracticability relieve Dr. Lambert from the performance of his contract, because Dr. Lambert's performance was made impractical through no fault of his own.

¶13.   In short, Dr. Lambert's medical diagnosis coupled with the finding that he is unfit to practice medicine due to his medical diagnosis makes it impossible and impractical for him to perform the personal services of a cardio-thoracic surgeon necessary to fulfill his contract; thus, he is excused from performing by section 261 and section 262. We find that there was no genuine issue of material fact, and summary judgment in favor of Dr. Lambert was appropriate. This issue is without merit.

### III.   DECLARATORY JUDGMENT

¶14.   Because we find that Dr. Lambert was entitled to summary judgment, we decline to address this issue. The grant of summary judgment in favor of Dr. Lambert is dispositive.

¶15.   **THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, J.**

9

**CARLTON, J., DISSENTING:**

¶16. I respectfully dissent from the majority's opinion and submit that the circuit court erred in granting Dr. Lambert's motion for summary judgment and dismissing Baptist's counterclaim against Dr. Lambert. As the majority recognizes, this Court reviews de novo a circuit court's grant or denial of summary judgment. *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 483 (¶10) (Miss. 2006).

¶17. The circuit court found that Dr. Lambert's obsessive-compulsive personality disorder (OCPD) rendered him unfit to practice medicine. The circuit court further found no dispute of material fact existed to contest that the defense of impossibility protected Dr. Lambert from breach of his contract. The circuit court's finding that no dispute of material fact existed to contest that the defense of impossibility protected Dr. Lambert from breach of his employment contract fails to distinguish the difference between a mental impairment (or condition) and an actual disability resulting from a mental impairment or condition.

¶18. Without considering the mitigating factors that may have allowed Dr. Lambert, despite his OCPD, to perform the contractual duties in his employment contract, the circuit court found that Dr. Lambert's OCPD excused his performance of his employment contract. Mitigating factors in disability law include the severity of the OCPD and whether the condition is treatable through counseling, medication, or behavior modification. Clearly, the circuit court's finding excused Dr. Lambert from performance under his employment contract without any factual determination of available mitigating factors such as treatment,

10

psychotherapy, or medication.[2]

¶19.    Nothing in the record establishes that a diagnosis of OCPD precludes a physician from obtaining medical licensure or receiving hospital privileges.  *See generally* 27 Am. Jur. 3d *Proof of Facts* § 1.5 (Supp. 2014) (discussing caselaw that acknowledged the claimant's mental impairments did not necessarily totally preclude her work activity).[3]  As previously discussed, the extent of the personality disorder, whether it can be treated, and other mitigating factors are relevant to whether the defense of impossibility applies to excuse contractual performance by one with a mental condition such as a personality disorder like OCPD.  Mitigation considerations include expected duration, available treatments, behavior modification, psychotherapy, and medications.  The mere existence of a personality disorder or mental impairment is insufficient to support a finding that the defense of impossibility applies, or by comparison, that an actual disability exists.[4]  As set forth in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, OCPD

<hr/>

[2] *Compare Dutcher v. Ingalls Shipbldg.*, 53 F.3d 723, 726 (5th Cir. 1995) (discussing disability law); *Hamm v. Runyon*, 51 F.3d 721, 726 (7th Cir. 1995) (finding the mere existence of an impairment insufficient to establish an actual disability or a substantial limitation on the ability to work).

[3] *See also* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 725-29 (4th ed. text revision 2000) (discussing that OCPD constitutes a personality disorder and not a mental disease or defect and is reflected in the behavior trait of a pattern of inflexible behavior that leads to impairment and stress).

[4] *See Smith v. City of Jackson*, 792 So. 2d 335, 338-39 (¶¶12, 15) (Miss. Ct. App. 2001) (finding no error in the Mississippi Workers' Compensation Commission's determination that the claimant's psychological responses to work-related stressors were a normal incident of his employment); Miss. Code Ann. § 71-3-3(i) (Rev. 2011) (defining disability relative to workers' compensation law).  *See also Barnes v. Dep't of Human Servs.*, 42 So. 3d 10, 13-18 (¶¶7-28) (Miss. 2010) (defining disability relative to social-security law and the obligation to pay child support).

manifests through a pattern of inflexible behavior that leads to stress and impairment. As acknowledged herein, however, and as established in disability law, mitigating facts may be available for such conditions that modify behavior and thus allow for the avoidance of work-related stress and impairment.[5]

¶20. The record in the present case reflects that, after Dr. Lambert's pattern of disruptive and unprofessional behavior and after Dr. Anderson's diagnosis of Dr. Lambert's disorder, Baptist provided Dr. Lambert with notice of the suspension of his privileges to practice at the hospital. Baptist's letter informed Dr. Lambert of the procedures he could follow to seek reinstatement of his hospital privileges. These procedures included completion of an approved treatment program, supervision during a probationary period, and any further action that Baptist might deem necessary. The record therefore reflects that mitigating factors existed that would allow Dr. Lambert, even with his OCPD diagnosis, to perform the medical duties stated in his employment contract and to seek reinstatement of his hospital privileges. The record further reflects that Dr. Lambert was previously aware that he displayed disruptive and uncooperative behavior in his past medical jobs and that he was asked to leave a prior position due to such behavior. However, the record also shows that, despite an awareness of his prior contentious and uncooperative work history, Dr. Lambert never sought or received treatment to modify his workplace behavior.

¶21. Based on the foregoing, I respectfully submit that a dispute of material fact exists as

---

[5] *See* Kathleen M. Dorr, *Exclusion of, or Discrimination against, Physician or Surgeon by Hospital*, 28 A.L.R. 5th 107 § 18(a), at 303 (1995) (discussing caselaw where physicians were terminated and/or suffered termination of their hospital privileges due to disruptive and uncooperative behavior).

to whether the defense of impossibility applies in this case to excuse Dr. Lambert from performance of his employment contract for physician services. I therefore would reverse the circuit court's grant of summary judgment and remand the case for trial on the issues raised in Baptist's counterclaim.

¶22. **BARNES, J., JOINS THIS OPINION.**